Richard J. Rabin (RR-0037)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Email: rrabin@akingump.com
        egigante@akingump.com

*Attorneys for Defendants Thomas Cleary and
Jillian Dedier*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

KEITH MURRAY,                                       :
                                                    :
                    Plaintiff,                      :        NO. 08-CV-02160 (LAK)
                                                    :
            -against-                               :
                                                    :        **DECLARATION OF**
UNITED PARCEL SERVICE OF AMERICA, INC., :            **EVANDRO C. GIGANTE, ESQ.**
UNITED PARCEL SERVICE, INC., UNITED                 :
PARCEL SERVICE CO., THOMAS CLEARY                   :
AND JILLIAN DEDIER,                                 :
                                                    :
                    Defendants.                     :

------------------------------------------------------------ x

I, Evandro C. Gigante, Esq., an attorney duly licensed to practice law before the United

States District Court for the Southern District of New York, do hereby declare as follows:

1.     I am an attorney with the law firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P.,

counsel for Defendants Thomas Cleary and Jillian Dedier (collectively, the "Individual

Defendants"). I submit this affidavit in support of the Individual Defendants' Motion to Dismiss

the Complaint filed by Plaintiff Keith Murray under Rules 12(b)(2) and 12(b)(5) of the Federal

Rules of Civil Procedure.

2.      On February 7, 2008, Plaintiff filed a First Amended Complaint in this action with the New York State Supreme Court, Bronx County.  On March 4, 2008, Defendants United Parcel Service of America Inc., United Parcel Service, Inc. and United Parcel Service Co. filed a Notice of Removal removing the instant action from the Supreme Court of the State of New York, Bronx County to this Court.  *See* Docket Entry No. 1.

3.      Attached hereto as Exhibit 1 is a true and correct copy of the First Amended Complaint filed by Plaintiff in the Supreme Court of the State of New York, Bronx County on February 7, 2008.

4.      Attached hereto as Exhibit 2 is a true and correct copy of the Docket Report for this matter printed on June 4, 2008 demonstrating that plaintiff has not filed an affidavit of service with the Court as required by N.Y. C.P.L.R. § 308(2).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: New York, New York
       June 4, 2008

Evandro C. Gigante

2

# EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**

KEITH MURRAY,

                        Plaintiff,

    - against -

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED PARCEL SERVICE, INC., UNITED
PARCEL SERVICE CO., THOMAS CLEARY and
JILLIAN DEDIER,

                        Defendants.

Index No. 300 850/08

**SUMMONS**

Plaintiff designates Bronx County as the place of trial. The basis of venue is Plaintiff's residence.

## TO THE ABOVE-NAMED DEFENDANTS

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served within twenty (20) days after service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
      January 30, 2008

                         By: _____
                            Adam Richards
                            ADAM RICHARDS LLC
                            40 Fulton Street, 7th Floor
                            New York, New York 10038
                            (212) 233-4400

To: UNITED PARCEL SERVICE OF AMERICA, INC.
    c/o Corporation Service Company
    2711 Centerville Road, Suite 400
    Wilmington, DE 19808

UNITED PARCEL SERVICE CO.
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

UNITED PARCEL SERVICE, INC.
c/o Corporation Service Company
80 State Street
Albany, New York 12207

THOMAS CLEARY
 c/o United Parcel Service, Inc.
 643 West 43rd Street
 New York, New York 10036

JILLIAN DEDIER
c/o United Parcel Service, Inc.
643 West 43rd Street
New York, New York 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

KEITH MURRAY,

                         Plaintiff,

    - against -

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED PARCEL SERVICE, INC., UNITED
PARCEL SERVICE CO., THOMAS CLEARY and
JILLIAN DEDIER,

                         Defendants.

**Index No. 300850/08**

**FIRST AMENDED COMPLAINT**

Plaintiff Keith Murray ("Plaintiff"), by his attorneys Adam Richards, LLC, as and

for his Complaint in this action hereby alleges as follows:

## PARTIES

1. At all times hereinafter mentioned, Plaintiff was and still is a resident of the

County of Bronx, State of New York, residing at 2116 Crotona Parkway, #3D, Bronx,

New York 10460.

2. At all times hereinafter mentioned, Defendant United Parcel Service of America,

Inc. was and still is a corporation existing under and by virtue of the laws of the State of

Delaware.

3. At all times hereinafter mentioned, Defendant United Parcel Service, Inc. was and

still is a corporation existing under and by virtue of the laws of the State of New York.

4. At all times hereinafter mentioned, Defendant United Parcel Service Co. was and

still is a corporation existing under and by virtue of the laws of the State of Delaware

(collectively, each of the United Parcel Service entities named herein are hereinafter

referred to as "UPS").

5.   At all times hereinafter mentioned, UPS maintained numerous places of business within the State of New York.

6.   At all times hereinafter mentioned, UPS owned, used or possessed real property situated within the State of New York.

7.   At all times hereinafter mentioned, UPS derived substantial revenue from doing business within the State of New York.

8.   At all times hereinafter mentioned, upon information and belief, Defendant Thomas Cleary ("Cleary") was employed by UPS as Head of Loss Prevention Services.

9.   At all times hereinafter mentioned, upon information and belief, Defendant Jillian Dedier ("Dedier") was employed by UPS in its Loss Prevention Services Department.

## FACTS RELEVANT TO ALL CLAIMS

### Background

10.   In or around the summer of 2004, Plaintiff began employment with UPS as a Package Delivery Driver.  One of the delivery routes assigned to Plaintiff was in the Washington Heights section of Manhattan (the "Washington Heights Route").

11. Plaintiff's supervisors and managers repeatedly emphasized to Plaintiff the importance of becoming friendly with the superintendents, superintendent helpers and porters employed at the buildings on his route and using their assistance to deliver packages to customers on the Washington Heights Route.

12. One such building employee on Plaintiff's route was an individual named Jose Beato, a superintendent's helper for the buildings located at 550, 552 and 554 West 188th Street.  Over time, Plaintiff became friendly with Beato and, with the approval of his

2

supervisors and UPS management, began using his assistance to deliver packages to the buildings where Beato worked.

### The Flawed UPS Investigation

13. Upon information and belief, sometime in late 2006, UPS undertook an internal investigation concerning allegations that fraudulently ordered cell phones were being delivered by UPS drivers on their routes (the "UPS Investigation").

14. Upon information and belief, as Head of UPS' Loss Prevention Unit, Defendant Cleary was appointed by UPS to oversee and manage the UPS Investigation.

15. On February 2, 2007, between 10 a.m. and 11 a.m., Cleary and several other individuals surrounded Plaintiff in his delivery truck while he was on his route on 188th Street. Cleary identified himself to Plaintiff as Head of the UPS Loss Prevention Unit. Cleary advised Plaintiff that an investigation was ongoing, demanded that Plaintiff accompany him to UPS headquarters on 42nd Street in Manhattan to assist UPS in its investigation and demanded that Plaintiff hand over his personal cell-phone, stating to Plaintiff that he did not want Plaintiff to contact anyone about the investigation.

16. Plaintiff peacefully and amicably complied with Cleary's requests, handed over his personal cell-phone to Cleary and accompanied Cleary to UPS headquarters.

17. Upon arriving at UPS headquarters at 42nd Street in Manhattan, Plaintiff was accompanied to an office where he was interviewed by Cleary and Defendant Dedier, another representative of UPS.

18. During the interview, Cleary showed Plaintiff a photograph of Beato and asked if Plaintiff recognized him. Plaintiff explained that he knew him as a "super-helper" at certain of the buildings on his route and that Plaintiff's supervisors had encouraged

3

Plaintiff to "get to know the neighborhood," especially individuals such as Beato, in order to help meet his delivery targets. Cleary then asked Plaintiff what he knew about the delivery of fraudulently ordered cell phones. Plaintiff told Cleary that he knew nothing about such phones.

19. Cleary then asked Plaintiff to write a statement explaining how he knew Beato. In his own hand, Plaintiff wrote a three (3) page statement setting forth, *inter alia*, that he was a cover driver that worked on the Washington Heights Route, that he had come to know Baeto on his route as a "super-helper," that in early 2006 he had contacted Ralph Carter, his supervisor, to express his discomfort about the fact that Beato was signing packages for many different people, that Plaintiff had been advised by Carter not to worry about Baeto signing for packages and that Carter had expressed that Plaintiff should only be concerned with his delivery targets and reducing the amount of "send again" packages on his route.

20. After signing his written statement to this effect, Cleary became agitated and started acting aggressively and abusively toward Plaintiff making Plaintiff fearful for his safety. At this point in time, Plaintiff asked to be let out of the room but Cleary refused. Instead, Cleary demanded that Plaintiff either resign, in writing, for "personal reasons," or admit to felony grand larceny. At that point, Cleary presented Plaintiff with a number of forms, including a form of resignation, a form of waiver of union representation and a form wherein Plaintiff would have admitted to the crimes Cleary had accused him of.

21. Under the circumstances, with no lawyer present and with no union representation made available to him and fearing for his safety, Plaintiff had no option but to sign the written resignation placed before him by Cleary and Dedier.

4

22. Cleary and Dedier presented the form of union waiver to Plaintiff while representing to him that it was a part of his written resignation. The union waiver was not a part of Plaintiff's written resignation. Plaintiff was misled by Cleary and Dedier into signing the waiver of union representation.

23. Had Plaintiff known he was would be accused of a crime that he did not commit and/or be asked to resign his position he would not knowingly have agreed to accompany Cleary to the UPS offices on 42nd Street, would not have consented to being confined in a room with Cleary and Dedier, would not have waived his rights to union representation and would have asked for an attorney to be present.

### Plaintiff is Falsely Arrested and Wrongfully Imprisoned

24. After being fraudulently induced into executing the written resignation and being misled into signing the union representation waiver, Cleary and Dedier left the interview room whereupon two (2) police officers of the New York City Police Department immediately entered the interview room and placed Plaintiff under arrest.

25. Plaintiff denied all knowledge of Cleary and Dedier's accusations of criminal activity. Defendants had no evidence of money or cell phones being exchanged between Plaintiff and Beato. Plaintiff had no prior criminal record warranting suspicion of criminal activity and had UPS, Cleary or Dedier spoken with Ralph Carter as part of their investigation, they would have learned that Plaintiff had previously raised concerns about Beato on more than one occasion. In view of this, and the facts set forth above, Plaintiff's arrest was made in bad faith and with malice by the Defendants.

26. Defendants affirmatively procured and/or instigated the arrest of Plaintiff.

5

27. Plaintiff was handcuffed and paraded out of the building in front of numerous other UPS employees, including some who had trained and worked with Plaintiff, causing Plaintiff to suffer embarrassment, humiliation and extreme emotional distress.

28. Upon exiting the UPS office building on 42nd Street, Plaintiff was marched to a police minivan parked directly outside the UPS offices. From there, Plaintiff was driven to a cell phone store on 181st Street whereupon one of the police officers retrieved from the store a number of cell phone packaging boxes.

29. From there, Plaintiff was driven to the Police Precinct at Broadway and 181st Street in Manhattan and placed in a holding cell with another individual whom Plaintiff later discovered to be the owner of the cell phone store from where the arresting officers had retrieved the cell-phone packaging boxes. Plaintiff was held in the holding cell for approximately one (1) hour.

30. From the holding cell, Plaintiff was taken to a police interview room where he was asked to identify a number of cell phones and was asked if he could identify the owner of a cell phone store that was represented to be on the Washington Heights Route. Plaintiff did not recognize the cell phones or the owner of the cell phone store. Plaintiff was also asked if he had received money for the cell-phones from Beato. Plaintiff stated that he had not. During the interview, Plaintiff at all times maintained his innocence of the crimes of which he was being accused. At no time did Plaintiff confess to the commission of any crime.

31. From the interview room, Plaintiff was again taken to the holding cell in the precinct and was held there for approximately four (4) more hours.

32. Later, during the evening of February 2, 2007, Plaintiff was taken from the police precinct at 181st Street to the Manhattan Detention Complex, otherwise known as "the Tombs" where he underwent a strip search.

33. For approximately the next 24 hours, Plaintiff was placed in and transferred between "pens," prison cells containing numerous other prisoners, some of whom, upon information and belief, were violent offenders.

34. On February 3, 2007, The People of the State of New York filed a Felony Complaint against Plaintiff. In the Complaint Plaintiff, and two other individuals, were accused of Grand Larceny in the Third Degree pursuant to New York Penal Law §155.35.

35. On February 3, 2007, Plaintiff was arraigned. The Manhattan District Attorney's office demanded that bail be set at $5,000. The Court ultimately set bail at $1500.

36. At the arraignment, the District attorney's Office represented to Plaintiff's Legal Aid lawyer that Plaintiff had confessed to the crimes of which he had been accused to another UPS driver.

37. No such confession was ever made by Plaintiff.

38. Plaintiff did not have the funds to post bail.

39. After the arraignment, Plaintiff was taken back to the Tombs, was given an AIDS test and a TB test and was assigned a prison cell. Plaintiff spent the next six (6) days imprisoned at the Tombs.

40. During his false imprisonment, Plaintiff was subjected to degrading, dehumanizing and emotionally destructive conditions.

41. On or about February 7, 2007, the sixth day of Plaintiff's imprisonment, Plaintiff's Legal Aid lawyer visited Plaintiff in prison and advised Plaintiff that the District Attorney had offered Plaintiff five (5) years of felony probation in return for a guilty plea.

42. Plaintiff's Legal Aid lawyer further advised Plaintiff that unless Plaintiff found someone who could post bail for him, he would remain in jail for the duration of the case if the District Attorney decided to proceed with the case. Plaintiff declined the District Attorney's plea offer.

43. Pursuant to NYCPL §180.80, on the final day of Plaintiff's wrongful imprisonment (six days after Plaintiff's arrest), the District Attorney's Office had to decide whether to present the case to a Grand Jury for indictment. Plaintiff's Legal Aid lawyer advised the Assistant District Attorney assigned to Plaintiff's case that Plaintiff would testify before the Grand Jury if the case was presented for indictment.

44. The District Attorney's Office decided not to present the case to the Grand Jury and did not seek any adjournment for further investigation of Plaintiff's case.

45. Accordingly, on February 8, 2007, at approximately 3:35 p.m., the Court released Plaintiff from incarceration.

**Plaintiff is Found Not to Have Committed Any Act of Misconduct**
**And the Criminal Case is Dismissed**

46. On July 27, 2007, a hearing was held before Administrative Law Judge Diane Dubiac at the New York State Department of Labor Unemployment Insurance Division concerning Plaintiff's right to receive unemployment benefits.

47. Administrative Law Judge Dubiac took evidence from both parties and heard testimony from Plaintiff and from Cleary on behalf of UPS, including testimony and evidence concerning Plaintiff's arrest, charge and imprisonment.

48. In a written decision dated July 30, 2007, ALJ Dubiac found as follows: "claimant [Plaintiff] did not commit such acts, on the record before me, I find that he committed no act of misconduct that resulted in his discharge. In reaching this decision, I do not find the employer's testimony that claimant violated the employer's delivery procedures to be significant as there was no testimony that claimant was discharged for such reason alone. Accordingly, I conclude that claimant is not subject to any disqualification and he is entitled to receive benefits. DECISION: The employer's objection is overruled."

49. On or about August 23, 2007, the criminal case against Plaintiff was sealed and dismissed (Mella, J.) in Plaintiff's favor pursuant to NYCPL §160.50.

50.    The events set forth above have inalterably changed Plaintiff's life for the worse. Plaintiff was detained against his will, was formally arrested and imprisoned. Plaintiff was subjected to degrading, dehumanizing and emotionally destructive conditions.

51.    Plaintiff was publicly shamed, disgraced, ridiculed, and humiliated and suffered damage to his reputation.

52.    Plaintiff has lost thousands of dollars in employment income and benefits, and has suffered permanent impairment of earning power.

9

53.      Plaintiff has developed a post traumatic stress disorder with complaints of anxiety, severe depression and guilt, crying spells, flashbacks of his incarceration in the Tombs, intrusive thoughts, nightmares, and severe insomnia.

54. Plaintiff has received psychiatric care since his release from the Tombs.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

55.      Plaintiff repeats and realleges Paragraphs 1 through 54 of his Complaint as if fully set forth herein.

56.      The Defendants, and others named and unnamed herein, individually and in concert with one another, caused Plaintiff to be confined and falsely arrested.

57.      Defendants intended to confine, or to cause the confinement, of Plaintiff.

58.      Plaintiff was conscious of his confinement and did consent to it.

59.      Plaintiff's confinement was not otherwise privileged.

60.      Defendants, individually and in concert with each other, initiated and/or caused the initiation and continuation of criminal proceedings against Plaintiff.

61.      The initiation and continuation of the criminal prosecution resulted in Plaintiff being deprived of his liberty.

62.      There was no probable cause for the commencement or continuation of the criminal proceeding.

63.      Defendants acted with actual malice towards Plaintiff, with utter and deliberate indifference to and disregard for Plaintiff's rights under the Constitution and laws of the United States.

64.      The prosecution terminated in Plaintiff's favor.

65.     The aforesaid conduct of Defendants operated to deprive Plaintiff of his rights under the Constitution and the laws of the United States: (a) Not to be deprived of liberty or property or to be arrested, detained or imprisoned except upon probable cause to believe them guilty of a crime (Fourth and Fourteenth Amendments); (b) to timely disclose to appropriate law enforcement authorities and/or to the defense of all evidence favorable to the defense (Due Process Clauses of the Fifth and Fourteenth Amendments); (c) not to be arrested, indicted, prosecuted, detained or imprisoned through the use of false, fabricated, misleading, or inherently unreliable "evidence," or through the wrongful withholding of material evidence favoring the defendant – in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments, the right to Grand Jury indictment under the Fifth and Fourteenth Amendments, the right to a fair trial under the Fifth, Sixth and Fourteenth Amendments, the right to reasonable bail under the Fifth, Eight and Fourteenth Amendments, and the right to be free of unreasonable search and seizure and deprivation of liberty or property under the Fourth and Fourteenth Amendments.

66.     The foregoing violations of Plaintiff's federal constitutional rights by Defendants were a direct, proximate and substantial cause of Plaintiff's false arrest and imprisonment and malicious criminal prosecution.

67.     The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendant's employment and authority.

68.     Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully and/or with deliberate indifference to Plaintiff's

11

constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

69.     By reason of the foregoing, all the individual Defendants are liable to Plaintiff for violating, acting in concert to violate, aiding and abetting each other to violate and/or conspiring to violate, Plaintiff's federal constitutional rights, pursuant to 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION
### (State Law False Arrest and False Imprisonment)

70.     Plaintiff repeats and realleges Paragraphs 1 through 69 of his Complaint as if fully set forth herein.

71.     As a result of the flawed UPS Investigation, Defendants Cleary, Dedier and UPS affirmatively procured or instigated Plaintiff's arrest and imprisonment.

72.     On or about February 2, 2007, Cleary and Dedier, individually and while in the course and scope of their employment with UPS, falsely arrested and imprisoned Plaintiff without warrant, authority of law or probable cause therefore.

73.     That the acts constituting the false arrest and false imprisonment consisted in part of the following: unlawfully and intentionally detaining and confining Plaintiff against his will and without his consent; unlawfully and intentionally detaining and confining Plaintiff without privilege, probable cause, or valid legal process; unlawfully detaining and confining Plaintiff through the unlawful arrest of Plaintiff; unlawfully detaining and confining Plaintiff through the use of force; and committing such other acts resulting in the unlawful arrest and imprisonment of Plaintiff.

74.     Plaintiff was conscious of the false arrest and confinement.

75.    As a direct and proximate result of the false arrest and imprisonment, Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, and loss of personal income.

76.    By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION
### (State Law Malicious Prosecution)

77.    Plaintiff repeats and realleges Paragraphs 1 through 76 of his Complaint as if fully set forth herein.

78.    As a result of the flawed UPS Investigation, Defendants Cleary, Dedier and UPS affirmatively procured or instigated a criminal proceeding against Plaintiff.

79.    Police Officers of the Patrol Boro Manhattan North Street Crime Unit, individually and while in the course and scope of their employment with the New York City Police Department, and acting under color of authority of the City of New York, continued with the criminal proceeding against Plaintiff affirmatively procured or instigated by Defendants Cleary, Dedier and UPS.

80.    The criminal proceeding was terminated in Plaintiff's favor.

81.    There was no probable cause for the criminal proceeding.

82.    The criminal proceeding was instituted by the Defendants with actual malice.

83.    As a direct and proximate result of the malicious prosecution, Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress,

moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income.

84.    By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

85.    Plaintiff repeats and realleges paragraphs 1 through 84 of his Complaint as if fully set forth herein.

86.    Cleary and Dedier, individually and in their official capacities as employees of UPS, were careless, reckless and negligent in conducting and performing their duties, including, in part, the negligent use of force in detaining and confining Plaintiff; and carelessly, recklessly and negligently conducting the UPS Investigation leading up to Plaintiff's arrest and confinement.

87.    That, as a direct, sole and proximate result of the carelessness, recklessness and negligence of Defendant UPS, its agents, servants and/or employees including Defendants Cleary and Dedier, Plaintiff was caused to and did sustain pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience and loss of personal and business income.

88.    Plaintiff's injuries and damages were caused solely by reason of the culpable conduct of UPS, Cleary and Dedier, as stated herein, without any fault or negligence on the part of Plaintiff contributing hereto.

89.    By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision)

90.     Plaintiff repeats and realleges paragraphs 1 through 89 of his Complaint as if fully set forth herein.

91.     UPS and Cleary were, at all times stated herein, in an employer-employee relationship.

92.     UPS and Dedier were, at all times stated herein, in an employer-employee relationship.

93.     Upon information and belief, UPS knew or should have known of Cleary's and Dedier's propensity for the type of conduct which caused Plaintiff's injuries as set forth herein prior to the occurrence of those injuries.

94.     The flawed UPS Investigation and the initial improper confinement and false arrest of Plaintiff occurred on UPS' premises.

95.     That, as a direct, sole and proximate result of the negligent supervision of Defendants Cleary and Dedier by Defendant UPS, Plaintiff was caused to and did sustain pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience and loss of personal and business income.

96.     By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Punitive Damages)

97.     Plaintiff repeats and realleges paragraphs 1 through 96 of his Complaint as if fully set forth herein.

98.    Defendants' actions toward Plaintiff were wanton, malicious, reckless and were conducted with a conscious disregard of the rights of Plaintiff.

99.    An award of punitive damages in an amount which exceeds the jurisdiction of all lower courts having jurisdiction is appropriate here.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

I.    For compensatory damages in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

II.    For an award of punitive damages.

III.    For reasonable attorney's fees, together with costs and disbursements pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court.

IV.    For pre-judgment interest as allowed by law.

V.    For such other and further relief as this Court deems just and proper.

Dated: New York, New York
       February 7, 2008

Respectfully submitted,

ADAM RICHARDS LLC

By: _____
       Adam Richards
       Attorneys for Plaintiff
       Keith Murray
       40 Fulton Street, 7th Floor
       New York, New York 10038
       (212) 233 4400

16

# EXHIBIT 2

ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:08-cv-02160-LAK

| | |
|---|---|
| Murray v. United Parcel Service of America, Inc. et al | Date Filed: 03/04/2008 |
| Assigned to: Judge Lewis A. Kaplan | Jury Demand: None |
| Case in other court: Supreme Court-County of New York, 300850-08 | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |
| Cause: 42:1983 Civil Rights Act | |

**Plaintiff**

**Keith Murray**


V.

**Defendant**

**United Parcel Service of America, Inc.**      represented by     **Evandro Cristiano Gigante**
Akin Gump Strauss Hauer & Feld LLP (NYC)
590 Madison Avenue
New York, NY 10022
(212) 872-1088
Fax: (212) 872-1002
Email: egigante@akingump.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Lee Israel**
Akin, Gump, Strauss, Hauer & Feld
590 Madison Avenue
New York, NY 10022
(212) 872-1000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan L. Sulds**
Akin Gump Strauss Hauer & Feld LLP (NYC)
590 Madison Avenue
New York, NY 10022
(212) 872-1042
Fax: (212) 872-1002
Email: jsulds@akingump.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Richard J. Rabin**
Akin Gump Strauss Hauer & Feld LLP
(NYC)
590 Madison Avenue
New York, NY 10022
(212)-872-1086
Fax: (212)-872-1002
Email: rrabin@akingump.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United Parcel Service, Inc.**    represented by    **Evandro Cristiano Gigante**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Lee Israel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan L. Sulds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard J. Rabin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United Parcel Service Co.**    represented by    **Evandro Cristiano Gigante**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Lee Israel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan L. Sulds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Richard J. Rabin
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas Cleary**

**Defendant**

**Jillian Dedier**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/04/2008 | 1 | NOTICE OF REMOVAL from Supreme Court, County of Bronx. Case Number: 300850-08. (Filing Fee $ 350.00, Receipt Number 643690).Document filed by United Parcel Service of America, Inc., United Parcel Service, Inc., United Parcel Service Co..(mbe) (Entered: 03/07/2008) |
| 03/04/2008 | | Magistrate Judge Douglas F. Eaton is so designated. (mbe) (Entered: 03/07/2008) |
| 03/04/2008 | | Case Designated ECF. (mbe) (Entered: 03/07/2008) |
| 03/04/2008 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by United Parcel Service of America, Inc., United Parcel Service, Inc., United Parcel Service Co..(mbe) (Entered: 03/07/2008) |
| 03/07/2008 | 3 | CERTIFICATE OF SERVICE of Notice of Removal served on Keith Murray on 3/4/08. Service was made by overnight mail. Document filed by United Parcel Service of America, Inc., United Parcel Service, Inc., United Parcel Service Co.. (Gigante, Evandro) (Entered: 03/07/2008) |
| 03/11/2008 | 4 | ANSWER to Complaint. Document filed by United Parcel Service of America, Inc., United Parcel Service, Inc., United Parcel Service Co.. (Attachments: # 1 Certificate Of Service)(Sulds, Jonathan) (Entered: 03/11/2008) |
| 04/01/2008 | 5 | ORDER RE SCHEDULING AND INITIAL PRETRIAL CONFERENCE:... Initial Conference set for 4/25/2008 at 10:00 AM in Courtroom 12D, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Signed by Judge Lewis A. Kaplan on 4/1/08) (cd) (Entered: 04/01/2008) |
| 04/23/2008 | 6 | CONSENT SCHEDULING ORDER: Joinder of Parties due by 7/8/2008. Discovery due by 8/8/2008. Joint Pretrial Order due by 10/1/2008. (Signed by Judge Lewis A. Kaplan on 4/23/08) (js) (Entered: 04/23/2008) |
| 05/08/2008 | 7 | NOTICE OF APPEARANCE by Richard J. Rabin on behalf of United Parcel Service of America, Inc., United Parcel Service, Inc., United |

| | | Parcel Service Co. (Rabin, Richard) (Entered: 05/08/2008) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/04/2008 14:24:35 | | | |
| PACER Login: | ag0054 | Client Code: | 683300.0056 |
| Description: | Docket Report | Search Criteria: | 1:08-cv-02160-LAK |
| Billable Pages: | 3 | Cost: | 0.24 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
KEITH MURRAY,                              :
                                           :
            Plaintiff,                     :        NO. 08-CV-02160 (LAK)
                  -against-                :
                                           :
UNITED PARCEL SERVICE OF AMERICA, INC., :
UNITED PARCEL SERVICE, INC., UNITED        :
PARCEL SERVICE CO., THOMAS CLEARY AND :
JILLIAN DEDIER,                            :
                                           :
                        Defendants.   x
------------------------------------------------------------

## CERTIFICATE OF SERVICE

I, Evandro C. Gigante, hereby certify that on June 4, 2008, I caused true and correct

copies of the following :

1.      Notice of Motion

2.      Affidavit of Thomas Cleary

3.      Affidavit of Jillian Dedier

4.      Declaration of Evandro C. Gigante, Esq.

5.      Memorandum of Law on Behalf of Defendants Thomas Cleary and Jillian Dedier
        in Support of Motion to Dismiss to Complaint Under Fed. R. Civ. P. 12(b)(2) and
        (12)(b)(5)

to be served via United Parcel Service Overnight Delivery upon the following:

Adam Richards
ADAM RICHARDS LLC
40 Fulton Street, 7th Floor
New York, New York  10038
*Attorney for Plaintiff*

1

Dated: New York, New York
       June 4, 2008

By: _____

    Evandro C. Gigante (EG-7402)
    AKIN GUMP STRAUSS HAUER & FELD LLP
    590 Madison Avenue
    New York, New York 10022
    (212) 872-1000 (Telephone)
    (212) 872-1002 (Facsimile)
    Email: egigante@akingump.com

    *Attorneys for Defendants Thomas Cleary and*
    *Jillian Dedier*