Richard J. Rabin (RR-0037)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Email: rrabin@akingump.com
         egigante@akingump.com

*Attorneys for Defendants United Parcel Service of America, Inc.,*
*United Parcel Service, Inc., and United Parcel Service Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

KEITH MURRAY,
                                                              :
                    Plaintiff,                                :     NO. 08-CV-02160 (LAK)
                                                              :
                          -against-                           :     **DECLARATION OF**
                                                              :     **RICHARD J. RABIN, ESQ.**
UNITED PARCEL SERVICE OF AMERICA, INC.,:
UNITED PARCEL SERVICE, INC., AND UNITED:
PARCEL SERVICE CO.,                                           :
                                           Defendants.        :
------------------------------------------------------------x
------------------------------------------------------------x
UNITED PARCEL SERVICE, INC.,                                  :
                                                              :
                    Third-Party Plaintiff,                    :
                                                              :
                          -against-                           :
                                                              :
                                                              :
                                                              :
                                                              :
JOSE BEATO,                                                   :
                                                              :
                    Third-Party Defendant.                    :
                                                              :
                                                              :
                                                              :
------------------------------------------------------------x

        I, Richard J. Rabin, Esq., an attorney duly licensed to practice law before the United

States District Court for the Southern District of New York, do hereby declare as follows:

1.       I am an attorney with the law firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P.,
counsel for Defendants United Parcel Service of America, Inc., United Parcel Service, Inc.,
United Parcel Service Co., (collectively, the "Defendants"). I submit this affidavit in support of
the Defendants' Motion for Leave to Amend the Answer filed by Defendants' pursuant to Rule
15(a) of the Federal Rules of Civil Procedure.

2.       On February 7, 2008, Plaintiff filed a First Amended Complaint in this action
with the New York State Supreme Court, Bronx County. Attached hereto as Exhibit 1 is a true
and correct copy of Plaintiff's First Amended Complaint.

3.       On March 4, 2008, Defendants United Parcel Service of America Inc., United
Parcel Service, Inc. and United Parcel Service Co. filed a Notice of Removal removing the
instant action from the Supreme Court of the State of New York, Bronx County to this Court.
*See* Docket Entry No. 1.

4.       Attached hereto as Exhibit 2 is a true and correct copy of Defendants' Proposed
Amended Answer and Counterclaims.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct to the best of my knowledge, information and belief.

Dated: New York, New York
       July 9, 2008

_____
             Richard J. Rabin

2

Exhibit 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**

KEITH MURRAY,

                              Plaintiff,

    - against -

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED PARCEL SERVICE, INC., UNITED
PARCEL SERVICE CO., THOMAS CLEARY and
JILLIAN DEDIER,

                              Defendants.

Index No. 300 850/08

**SUMMONS**

Plaintiff designates Bronx County as
the place of trial.  The basis of venue
is Plaintiff's residence.

<u>**TO THE ABOVE-NAMED DEFENDANTS**</u>

        YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to

serve a copy of your answer, or, if the Complaint is not served within twenty (20) days

after service of this summons, exclusive of the day of service (or within 30 days after the

service is complete if this summons is not personally delivered to you within the State of

New York); and in case of your failure to appear or answer, judgment will be taken

against you by default for the relief demanded herein.

Dated: New York, New York
        January 30, 2008

                              By:_____
                                    Adam Richards
                                    ADAM RICHARDS LLC
                                    40 Fulton Street, 7th Floor
                                    New York, New York 10038
                                    (212) 233-4400

To:  UNITED PARCEL SERVICE OF AMERICA, INC.
        c/o Corporation Service Company
        2711 Centerville Road, Suite 400
        Wilmington, DE 19808

UNITED PARCEL·SERVICE CO.
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

UNITED PARCEL SERVICE, INC.
c/o Corporation Service Company
80 State Street
Albany, New York 12207

THOMAS CLEARY
c/o United Parcel Service, Inc.
643 West 43rd Street
New York, New York 10036

JILLIAN DEDIER
c/o United Parcel Service, Inc.
643 West 43rd Street
New York, New York 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

KEITH MURRAY,

                                  Plaintiff,

       - against -

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED   PARCEL   SERVICE,   INC.,   UNITED
PARCEL  SERVICE  CO.,  THOMAS  CLEARY  and
JILLIAN DEDIER,

                                  Defendants.

Index No. 300850/08

**FIRST AMENDED COMPLAINT**

       Plaintiff Keith Murray ("Plaintiff"), by his attorneys Adam Richards, LLC, as and

for his Complaint in this action hereby alleges as follows:

## PARTIES

       1.  At all times hereinafter mentioned, Plaintiff was and still is a resident of the

County of Bronx, State of New York, residing at 2116 Crotona Parkway, #3D, Bronx,

New York 10460.

       2.  At all times hereinafter mentioned, Defendant United Parcel Service of America,

Inc. was and still is a corporation existing under and by virtue of the laws of the State of

Delaware.

       3.  At all times hereinafter mentioned, Defendant United Parcel Service, Inc. was and

still is a corporation existing under and by virtue of the laws of the State of New York.

       4.  At all times hereinafter mentioned, Defendant United Parcel Service Co. was and

still is a corporation existing under and by virtue of the laws of the State of Delaware

(collectively, each of the United Parcel Service entities named herein are hereinafter

referred to as "UPS").

5.  At all times hereinafter mentioned, UPS maintained numerous places of business within the State of New York.

6.  At all times hereinafter mentioned, UPS owned, used or possessed real property situated within the State of New York.

7.  At all times hereinafter mentioned, UPS derived substantial revenue from doing business within the State of New York.

8.  At all times hereinafter mentioned, upon information and belief, Defendant Thomas Cleary ("Cleary") was employed by UPS as Head of Loss Prevention Services.

9.  At all times hereinafter mentioned, upon information and belief, Defendant Jillian Dedier ("Dedier") was employed by UPS in its Loss Prevention Services Department.

## FACTS RELEVANT TO ALL CLAIMS

### Background

10.    In or around the summer of 2004, Plaintiff began employment with UPS as a Package Delivery Driver.  One of the delivery routes assigned to Plaintiff was in the Washington Heights section of Manhattan (the "Washington Heights Route").

11. Plaintiff's supervisors and managers repeatedly emphasized to Plaintiff the importance of becoming friendly with the superintendents, superintendent helpers and porters employed at the buildings on his route and using their assistance to deliver packages to customers on the Washington Heights Route.

12. One such building employee on Plaintiff's route was an individual named Jose Beato, a superintendent's helper for the buildings located at 550, 552 and 554 West 188th Street.  Over time, Plaintiff became friendly with Beato and, with the approval of his

2

supervisors and UPS management, began using his assistance to deliver packages to the buildings where Beato worked.

**The Flawed UPS Investigation**

13. Upon information and belief, sometime in late 2006, UPS undertook an internal investigation concerning allegations that fraudulently ordered cell phones were being delivered by UPS drivers on their routes (the "UPS Investigation").

14. Upon information and belief, as Head of UPS' Loss Prevention Unit, Defendant Cleary was appointed by UPS to oversee and manage the UPS Investigation.

15. On February 2, 2007, between 10 a.m. and 11 a.m., Cleary and several other individuals surrounded Plaintiff in his delivery truck while he was on his route on 188th Street. Cleary identified himself to Plaintiff as Head of the UPS Loss Prevention Unit. Cleary advised Plaintiff that an investigation was ongoing, demanded that Plaintiff accompany him to UPS headquarters on 42nd Street in Manhattan to assist UPS in its investigation and demanded that Plaintiff hand over his personal cell-phone, stating to Plaintiff that he did not want Plaintiff to contact anyone about the investigation.

16. Plaintiff peacefully and amicably complied with Cleary's requests, handed over his personal cell-phone to Cleary and accompanied Cleary to UPS headquarters.

17. Upon arriving at UPS headquarters at 42nd Street in Manhattan, Plaintiff was accompanied to an office where he was interviewed by Cleary and Defendant Dedier, another representative of UPS.

18. During the interview, Cleary showed Plaintiff a photograph of Beato and asked if Plaintiff recognized him. Plaintiff explained that he knew him as a "super-helper" at certain of the buildings on his route and that Plaintiff's supervisors had encouraged

3

Plaintiff to "get to know the neighborhood," especially individuals such as Beato, in order to help meet his delivery targets. Cleary then asked Plaintiff what he knew about the delivery of fraudulently ordered cell phones. Plaintiff told Cleary that he knew nothing about such phones.

19. Cleary then asked Plaintiff to write a statement explaining how he knew Beato. In his own hand, Plaintiff wrote a three (3) page statement setting forth, *inter alia*, that he was a cover driver that worked on the Washington Heights Route, that he had come to know Baeto on his route as a "super-helper," that in early 2006 he had contacted Ralph Carter, his supervisor, to express his discomfort about the fact that Beato was signing packages for many different people, that Plaintiff had been advised by Carter not to worry about Baeto signing for packages and that Carter had expressed that Plaintiff should only be concerned with his delivery targets and reducing the amount of "send again" packages on his route.

20. After signing his written statement to this effect, Cleary became agitated and started acting aggressively and abusively toward Plaintiff making Plaintiff fearful for his safety. At this point in time, Plaintiff asked to be let out of the room but Cleary refused. Instead, Cleary demanded that Plaintiff either resign, in writing, for "personal reasons," or admit to felony grand larceny. At that point, Cleary presented Plaintiff with a number of forms, including a form of resignation, a form of waiver of union representation and a form wherein Plaintiff would have admitted to the crimes Cleary had accused him of.

21. Under the circumstances, with no lawyer present and with no union representation made available to him and fearing for his safety, Plaintiff had no option but to sign the written resignation placed before him by Cleary and Dedier.

22. Cleary and Dedier presented the form of union waiver to Plaintiff while representing to him that it was a part of his written resignation. The union waiver was not a part of Plaintiff's written resignation. Plaintiff was misled by Cleary and Dedier into signing the waiver of union representation.

23. Had Plaintiff known he was would be accused of a crime that he did not commit and/or be asked to resign his position he would not knowingly have agreed to accompany Cleary to the UPS offices on 42nd Street, would not have consented to being confined in a room with Cleary and Dedier, would not have waived his rights to union representation and would have asked for an attorney to be present.

**Plaintiff is Falsely Arrested and Wrongfully Imprisoned**

24. After being fraudulently induced into executing the written resignation and being misled into signing the union representation waiver, Cleary and Dedier left the interview room whereupon two (2) police officers of the New York City Police Department immediately entered the interview room and placed Plaintiff under arrest.

25. Plaintiff denied all knowledge of Cleary and Dedier's accusations of criminal activity. Defendants had no evidence of money or cell phones being exchanged between Plaintiff and Beato. Plaintiff had no prior criminal record warranting suspicion of criminal activity and had UPS, Cleary or Dedier spoken with Ralph Carter as part of their investigation, they would have learned that Plaintiff had previously raised concerns about Beato on more than one occasion. In view of this, and the facts set forth above, Plaintiff's arrest was made in bad faith and with malice by the Defendants.

26. Defendants affirmatively procured and/or instigated the arrest of Plaintiff.

5

27. Plaintiff was handcuffed and paraded out of the building in front of numerous other UPS employees, including some who had trained and worked with Plaintiff, causing Plaintiff to suffer embarrassment, humiliation and extreme emotional distress.

28. Upon exiting the UPS office building on 42nd Street, Plaintiff was marched to a police minivan parked directly outside the UPS offices. From there, Plaintiff was driven to a cell phone store on 181st Street whereupon one of the police officers retrieved from the store a number of cell phone packaging boxes.

29. From there, Plaintiff was driven to the Police Precinct at Broadway and 181st Street in Manhattan and placed in a holding cell with another individual whom Plaintiff later discovered to be the owner of the cell phone store from where the arresting officers had retrieved the cell-phone packaging boxes. Plaintiff was held in the holding cell for approximately one (1) hour.

30. From the holding cell, Plaintiff was taken to a police interview room where he was asked to identify a number of cell phones and was asked if he could identify the owner of a cell phone store that was represented to be on the Washington Heights Route. Plaintiff did not recognize the cell phones or the owner of the cell phone store. Plaintiff was also asked if he had received money for the cell-phones from Beato. Plaintiff stated that he had not. During the interview, Plaintiff at all times maintained his innocence of the crimes of which he was being accused. At no time did Plaintiff confess to the commission of any crime.

31. From the interview room, Plaintiff was again taken to the holding cell in the precinct and was held there for approximately four (4) more hours.

6

32. Later, during the evening of February 2, 2007, Plaintiff was taken from the police precinct at 181st Street to the Manhattan Detention Complex, otherwise known as "the Tombs" where he underwent a strip search.

33. For approximately the next 24 hours, Plaintiff was placed in and transferred between "pens," prison cells containing numerous other prisoners, some of whom, upon information and belief, were violent offenders.

34. On February 3, 2007, The People of the State of New York filed a Felony Complaint against Plaintiff. In the Complaint Plaintiff, and two other individuals, were accused of Grand Larceny in the Third Degree pursuant to New York Penal Law §155.35.

35. On February 3, 2007, Plaintiff was arraigned. The Manhattan District Attorney's office demanded that bail be set at $5,000. The Court ultimately set bail at $1500.

36. At the arraignment, the District attorney's Office represented to Plaintiff's Legal Aid lawyer that Plaintiff had confessed to the crimes of which he had been accused to another UPS driver.

37. No such confession was ever made by Plaintiff.

38. Plaintiff did not have the funds to post bail.

39. After the arraignment, Plaintiff was taken back to the Tombs, was given an AIDS test and a TB test and was assigned a prison cell. Plaintiff spent the next six (6) days imprisoned at the Tombs.

40. During his false imprisonment, Plaintiff was subjected to degrading, dehumanizing and emotionally destructive conditions.

7

41. On or about February 7, 2007, the sixth day of Plaintiff's imprisonment, Plaintiff's Legal Aid lawyer visited Plaintiff in prison and advised Plaintiff that the District Attorney had offered Plaintiff five (5) years of felony probation in return for a guilty plea.

42. Plaintiff's Legal Aid lawyer further advised Plaintiff that unless Plaintiff found someone who could post bail for him, he would remain in jail for the duration of the case if the District Attorney decided to proceed with the case.  Plaintiff declined the District Attorney's plea offer.

43. Pursuant to NYCPL §180.80, on the final day of Plaintiff's wrongful imprisonment (six days after Plaintiff's arrest), the District Attorney's Office had to decide whether to present the case to a Grand Jury for indictment.  Plaintiff's Legal Aid lawyer advised the Assistant District Attorney assigned to Plaintiff's case that Plaintiff would testify before the Grand Jury if the case was presented for indictment.

44. The District Attorney's Office decided not to present the case to the Grand Jury and did not seek any adjournment for further investigation of Plaintiff's case.

45. Accordingly, on February 8, 2007, at approximately 3:35 p.m., the Court released Plaintiff from incarceration.

**Plaintiff is Found Not to Have Committed Any Act of Misconduct
And the Criminal Case is Dismissed**

46. On July 27, 2007, a hearing was held before Administrative Law Judge Diane Dubiac at the New York State Department of Labor Unemployment Insurance Division concerning Plaintiff's right to receive unemployment benefits.

47. Administrative Law Judge Dubiac took evidence from both parties and heard testimony from Plaintiff and from Cleary on behalf of UPS, including testimony and evidence concerning Plaintiff's arrest, charge and imprisonment.

48. In a written decision dated July 30, 2007, ALJ Dubiac found as follows: "claimant [Plaintiff] did not commit such acts, on the record before me, I find that he committed no act of misconduct that resulted in his discharge. In reaching this decision, I do not find the employer's testimony that claimant violated the employer's delivery procedures to be significant as there was no testimony that claimant was discharged for such reason alone. Accordingly, I conclude that claimant is not subject to any disqualification and he is entitled to receive benefits. DECISION: The employer's objection is overruled."

49. On or about August 23, 2007, the criminal case against Plaintiff was sealed and dismissed (Mella, J.) in Plaintiff's favor pursuant to NYCPL §160.50.

50.    The events set forth above have inalterably changed Plaintiff's life for the worse. Plaintiff was detained against his will, was formally arrested and imprisoned. Plaintiff was subjected to degrading, dehumanizing and emotionally destructive conditions.

51.    Plaintiff was publicly shamed, disgraced, ridiculed, and humiliated and suffered damage to his reputation.

52.    Plaintiff has lost thousands of dollars in employment income and benefits, and has suffered permanent impairment of earning power.

9

53.     Plaintiff has developed a post traumatic stress disorder with complaints of anxiety, severe depression and guilt, crying spells, flashbacks of his incarceration in the Tombs, intrusive thoughts, nightmares, and severe insomnia.

54. Plaintiff has received psychiatric care since his release from the Tombs.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

55.     Plaintiff repeats and realleges Paragraphs 1 through 54 of his Complaint as if fully set forth herein.

56.     The Defendants, and others named and unnamed herein, individually and in concert with one another, caused Plaintiff to be confined and falsely arrested.

57.     Defendants intended to confine, or to cause the confinement, of Plaintiff.

58.     Plaintiff was conscious of his confinement and did consent to it.

59.     Plaintiff's confinement was not otherwise privileged.

60.     Defendants, individually and in concert with each other, initiated and/or caused the initiation and continuation of criminal proceedings against Plaintiff.

61.     The initiation and continuation of the criminal prosecution resulted in Plaintiff being deprived of his liberty.

62.     There was no probable cause for the commencement or continuation of the criminal proceeding.

63.     Defendants acted with actual malice towards Plaintiff, with utter and deliberate indifference to and disregard for Plaintiff's rights under the Constitution and laws of the United States.

64.     The prosecution terminated in Plaintiff's favor.

10

65.     The aforesaid conduct of Defendants operated to deprive Plaintiff of his rights under the Constitution and the laws of the United States: (a) Not to be deprived of liberty or property or to be arrested, detained or imprisoned except upon probable cause to believe them guilty of a crime (Fourth and Fourteenth Amendments); (b) to timely disclose to appropriate law enforcement authorities and/or to the defense of all evidence favorable to the defense (Due Process Clauses of the Fifth and Fourteenth Amendments); (c) not to be arrested, indicted, prosecuted, detained or imprisoned through the use of false, fabricated, misleading, or inherently unreliable "evidence," or through the wrongful withholding of material evidence favoring the defendant – in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments, the right to Grand Jury indictment under the Fifth and Fourteenth Amendments, the right to a fair trial under the Fifth, Sixth and Fourteenth Amendments, the right to reasonable bail under the Fifth, Eight and Fourteenth Amendments, and the right to be free of unreasonable search and seizure and deprivation of liberty or property under the Fourth and Fourteenth Amendments.

66.     The foregoing violations of Plaintiff's federal constitutional rights by Defendants were a direct, proximate and substantial cause of Plaintiff's false arrest and imprisonment and malicious criminal prosecution.

67.     The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendant's employment and authority.

68.     Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully and/or with deliberate indifference to Plaintiff's

constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

69.     By reason of the foregoing, all the individual Defendants are liable to Plaintiff for violating, acting in concert to violate, aiding and abetting each other to violate and/or conspiring to violate, Plaintiff's federal constitutional rights, pursuant to 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION
### (State Law False Arrest and False Imprisonment)

70.     Plaintiff repeats and realleges Paragraphs 1 through 69 of his Complaint as if fully set forth herein.

71.     As a result of the flawed UPS Investigation, Defendants Cleary, Dedier and UPS affirmatively procured or instigated Plaintiff's arrest and imprisonment.

72.     On or about February 2, 2007, Cleary and Dedier, individually and while in the course and scope of their employment with UPS, falsely arrested and imprisoned Plaintiff without warrant, authority of law or probable cause therefore.

73.     That the acts constituting the false arrest and false imprisonment consisted in part of the following: unlawfully and intentionally detaining and confining Plaintiff against his will and without his consent; unlawfully and intentionally detaining and confining Plaintiff without privilege, probable cause, or valid legal process; unlawfully detaining and confining Plaintiff through the unlawful arrest of Plaintiff; unlawfully detaining and confining Plaintiff through the use of force; and committing such other acts resulting in the unlawful arrest and imprisonment of Plaintiff.

74.     Plaintiff was conscious of the false arrest and confinement.

12

75.    As a direct and proximate result of the false arrest and imprisonment, Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, and loss of personal income.

76.    By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION
### (State Law Malicious Prosecution)

77.    Plaintiff repeats and realleges Paragraphs 1 through 76 of his Complaint as if fully set forth herein.

78.    As a result of the flawed UPS Investigation, Defendants Cleary, Dedier and UPS affirmatively procured or instigated a criminal proceeding against Plaintiff.

79.    Police Officers of the Patrol Boro Manhattan North Street Crime Unit, individually and while in the course and scope of their employment with the New York City Police Department, and acting under color of authority of the City of New York, continued with the criminal proceeding against Plaintiff affirmatively procured or instigated by Defendants Cleary, Dedier and UPS.

80.    The criminal proceeding was terminated in Plaintiff's favor.

81.    There was no probable cause for the criminal proceeding.

82.    The criminal proceeding was instituted by the Defendants with actual malice.

83.    As a direct and proximate result of the malicious prosecution, Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress,

moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income.

84.    By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

85.    Plaintiff repeats and realleges paragraphs 1 through 84 of his Complaint as if fully set forth herein.

86.    Cleary and Dedier, individually and in their official capacities as employees of UPS, were careless, reckless and negligent in conducting and performing their duties, including, in part, the negligent use of force in detaining and confining Plaintiff; and carelessly, recklessly and negligently conducting the UPS Investigation leading up to Plaintiff's arrest and confinement.

87.    That, as a direct, sole and proximate result of the carelessness, recklessness and negligence of Defendant UPS, its agents, servants and/or employees including Defendants Cleary and Dedier, Plaintiff was caused to and did sustain pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience and loss of personal and business income.

88.    Plaintiff's injuries and damages were caused solely by reason of the culpable conduct of UPS, Cleary and Dedier, as stated herein, without any fault or negligence on the part of Plaintiff contributing hereto.

89.    By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

14

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision)

90.     Plaintiff repeats and realleges paragraphs 1 through 89 of his Complaint as if fully set forth herein.

91.     UPS and Cleary were, at all times stated herein, in an employer-employee relationship.

92.     UPS and Dedier were, at all times stated herein, in an employer-employee relationship.

93.     Upon information and belief, UPS knew or should have known of Cleary's and Dedier's propensity for the type of conduct which caused Plaintiff's injuries as set forth herein prior to the occurrence of those injuries.

94.     The flawed UPS Investigation and the initial improper confinement and false arrest of Plaintiff occurred on UPS' premises.

95.     That, as a direct, sole and proximate result of the negligent supervision of Defendants Cleary and Dedier by Defendant UPS, Plaintiff was caused to and did sustain pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience and loss of personal and business income.

96.     By reason of the foregoing, Plaintiff has been injured, and damaged in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Punitive Damages)

97.     Plaintiff repeats and realleges paragraphs 1 through 96 of his Complaint as if fully set forth herein.

15

98.     Defendants' actions toward Plaintiff were wanton, malicious, reckless and were conducted with a conscious disregard of the rights of Plaintiff.

99.     An award of punitive damages in an amount which exceeds the jurisdiction of all lower courts having jurisdiction is appropriate here.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

I.      For compensatory damages in an amount which exceeds the jurisdiction of all lower courts having jurisdiction.

II.     For an award of punitive damages.

III.    For reasonable attorney's fees, together with costs and disbursements pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court.

IV.     For pre-judgment interest as allowed by law.

V.      For such other and further relief as this Court deems just and proper.

Dated: New York, New York
       February 7, 2008

                    Respectfully submitted,

                    ADAM RICHARDS LLC

By:     _____
        Adam Richards
        Attorneys for Plaintiff
        Keith Murray
        40 Fulton Street, 7th Floor
        New York, New York 10038
        (212) 233 4400

16

Exhibit 2

Richard J. Rabin (RR-0037)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000

*Attorneys for Defendants United Parcel Service,
Inc., United Parcel Service of America, Inc., and
United Parcel Service Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

KEITH MURRAY,                                    :          NO. 08-CV-02160 (LAK)
                                                 :
                              Plaintiff,         :          **PROPOSED AMENDED**
                                                 :          **ANSWER AND**
                    -against-                    :          **COUNTERCLAIM**
                                                 :
UNITED PARCEL SERVICE OF AMERICA, INC.,          :
UNITED PARCEL SERVICE, INC., AND UNITED          :
PARCEL SERVICE CO.,                              :
                                                 :
                              Defendants.        :
-------------------------------------------------------- x
-------------------------------------------------------- x
UNITED PARCEL SERVICE, INC.,                     :
                                                 :
                      Third-Party Plaintiff,     :
                                                 :
                    -against-                    :
                                                 :
                                                 :
JOSE BEATO,                                      :
                                                 :
                      Third-Party Defendant.     :
                                                 :
                                                 :
-------------------------------------------------------- x

    Defendants United Parcel Service, Inc., United Parcel Service of America, Inc., and

United Parcel Service Co. (collectively "Defendants" or "UPS") by and through their attorneys

Akin Gump Strauss Hauer & Feld LLP, hereby answers the First Amended Complaint (the

"Complaint") filed by Keith Murray ("Plaintiff") as set forth below. UPS further states that any allegation in the Complaint that is not expressly admitted below is denied.

## PARTIES

1.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations concerning Plaintiff's residence.

2.    UPS admits the allegations to Paragraph 2 of the Complaint and avers that Defendant United Parcel Service of America, Inc. is not a proper party to this action.

3.    UPS admits the allegations in Paragraph 3 of the Complaint.

4.    UPS admits the allegations in Paragraph 4 of the Complaint and avers that Defendant United Parcel Service Co. is not a proper party to this action.

5.    UPS denies the allegations in Paragraph 5 of the Complaint, except admits that UPS maintained places of business within New York State since January 1, 2004.

6.    UPS denies the allegations in Paragraph 6 of the Complaint, except admits that UPS owned, used or possessed real property within New York State since January 1, 2004.

7.    UPS denies the allegations in Paragraph 7 of the Complaint, except admits that UPS derived revenue from doing business within New York State since January 1, 2004.

8.    UPS denies the allegations in Paragraph 8 of the Complaint, except admits that Defendant Thomas Cleary ("Cleary") is employed by UPS and avers that Mr. Cleary is employed as a Security Supervisor.

9.    UPS denies the allegations in Paragraph 9 of the Complaint, except admits that Defendant Jillian Dedier ("Dedier") is employed by UPS and avers that Ms. Dedier is employed as a Security Supervisor.

## FACTS RELEVANT TO THE CASE

10.     UPS denies the allegations in Paragraph 10 of the Complaint concerning the date of Plaintiff's commencement of employment, and admits that Plaintiff was a package delivery driver (i.e., Service Provider) and that Plaintiff was assigned to a route in Washington Heights, Manhattan.

11.     UPS denies the allegations in Paragraph 11 of the Complaint.

12.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 12 of the Complaint, except denies that its supervisors or management approved Plaintiff's use of Jose Beato to deliver UPS packages.

13.     UPS denies the allegations in Paragraph 13 of the Complaint, except admits that an internal investigation was commenced in late 2006 into a possible cell phone scam focusing on Plaintiff Keith Murray.

14.     UPS denies the allegations in Paragraph 14 of the Complaint, except admits that Defendant Cleary was assigned to oversee the investigation.

15.     UPS denies the allegations in Paragraph 15 of the Complaint, except admits and avers that on February 2, 2007, Defendant Cleary and other individuals met Plaintiff at his package car while Plaintiff was on his route; that Defendant Cleary requested that Plaintiff accompany him back to UPS's 43rd Street facility due to an ongoing investigation; and that Defendant Cleary also requested that Plaintiff hand over his personal cell phone because Defendant Cleary did not want Plaintiff to contact anyone about the investigation.

16.     UPS admits that Plaintiff complied with Defendant Cleary's requests.

17.     UPS denies the allegations in Paragraph 17 of the Complaint, except admits and avers that Plaintiff was accompanied to UPS's 43rd Street facility.

18.    UPS denies the allegations in Paragraph 17 of the Complaint, except admits that Defendant Cleary showed Plaintiff a photograph of Mr. Beato and asked if Plaintiff recognized Mr. Beato; that Defendant Cleary asked what Plaintiff knew about the delivery of fraudulently ordered cell phones; and that Plaintiff provided Defendant Cleary with the explanation set forth in Paragraph 18 of the Complaint.

19.    UPS denies the allegations in Paragraph 19 of the Complaint and avers that Plaintiff was asked to write a statement and in fact wrote a 2 page statement in which he admitted to delivering cell-phone packages to "Jose" 2-3 times per week (for approximately 1 year) directly from his package car while knowing that Jose's identification did not match the intended recipients of the packages.

20.    UPS denies the allegations in Paragraph 20 of the Complaint.

21.    UPS denies the allegations in Paragraph 21 of the Complaint.

22.    UPS denies the allegations in Paragraph 22 of the Complaint.

23.    UPS denies the allegations in Paragraph 23 of the Complaint.

24.    UPS denies the allegations in Paragraph 24 of the Complaint, except admits that after Plaintiff's interview with Defendants Cleary and Dedier concluded, police officers from the New York City Police Department entered the interview room and placed Plaintiff under arrest.

25.    UPS denies the allegations in Paragraph 25 of the Complaint, except admits that Plaintiff denied all knowledge of criminal activity.

26.    UPS denies the allegations in Paragraph 26 of the Complaint.

27.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 27 of the Complaint, except admits that Plaintiff was handcuffed and escorted out of the building.

28.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 28 of the Complaint.

29.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 29 of the Complaint.

30.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 30 of the Complaint.

31.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 31 of the Complaint.

32.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 32 of the Complaint.

33.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 33 of the Complaint.

34.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 34 of the Complaint.

35.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 35 of the Complaint.

36.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 36 of the Complaint.

37.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 37 of the Complaint.

38.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 38 of the Complaint.

39.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 39 of the Complaint.

40.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 40 of the Complaint.

41.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 41 of the Complaint.

42.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 42 of the Complaint.

43.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 43 of the Complaint.

44.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 44 of the Complaint.

45.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 45 of the Complaint.

46.     UPS admits the allegations in Paragraph 46 of the Complaint.

47.     UPS admits that the Administrative Law Judge took evidence and heard testimony from both parties, although denies that Defendant Cleary was given an adequate opportunity to present UPS's position concerning Plaintiff's misconduct and resignation.

48.     With respect to Paragraph 48 of the Complaint, UPS admits that Plaintiff purports to quote language contained in the ALJ's opinion issued in Plaintiff's unemployment insurance case, and refers the Court to such opinion for a true and accurate transcription thereof.  UPS otherwise denies the allegations in Paragraph 48 of the Complaint.

49.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 49 of the Complaint.

50.     With respect to Paragraph 50 of the Complaint, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 50, except denies such allegations to the extent they are asserted against UPS in any respect.

51.     With respect to Paragraph 51 of the Complaint, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 50, except denies such allegations to the extent they are asserted against UPS in any respect.

52.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 52 of the Complaint.

53.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 53 of the Complaint.

54.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 54 of the Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

55.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 54 the Complaint.

56.     UPS denies the allegations in Paragraph 56 of the Complaint.

57.     UPS denies the allegations in Paragraph 57 of the Complaint.

58.     UPS denies the allegations in Paragraph 58 of the Complaint, except admits that Plaintiff willfully consented to be interviewed by UPS (Plaintiff's employer) on UPS' premises during working hours concerning the performance of his duties for UPS.

59.     UPS denies the allegations in Paragraph 59 of the Complaint.

60.     UPS denies the allegations in Paragraph 60 of the Complaint.

61.     Paragraph 61 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 61.

62.     Paragraph 62 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 62.

63.     UPS denies the allegations in Paragraph 63 of the Complaint.

64.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 64 of the Complaint.

65.     UPS denies the allegations in Paragraph 65 of the Complaint.

66.     UPS denies the allegations in Paragraph 66 of the Complaint.

67.     UPS denies the allegations in Paragraph 67 of the Complaint.

68.     UPS denies the allegations in Paragraph 68 of the Complaint.

69.     UPS denies the allegations in Paragraph 69 of the Complaint

## AS AND FOR A SECOND CAUSE OF ACTION
### (State Law False Arrest and False Imprisonment)

70.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 69 the Complaint.

71.     UPS denies the allegations in Paragraph 71 of the Complaint.

72.     UPS denies the allegations in Paragraph 72 of the Complaint.

73.     UPS denies the allegations in Paragraph 73 of the Complaint.

74.     UPS denies the allegations in Paragraph 74 of the Complaint.

75.     UPS denies the allegations in Paragraph 75 of the Complaint.

76.    UPS denies the allegations in Paragraph 76 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION
### (State Law Malicious Prosecution)

77.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 76 the Complaint.

78.     UPS denies the allegations in Paragraph 78 of the Complaint.

79.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 79 of the Complaint, except denies that the criminal proceeding against Plaintiff was affirmatively procured or instigated by Defendants Cleary, Dedier and/or UPS.

80.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 80 of the Complaint.

81.     Paragraph 81 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 81.

82.     UPS denies the allegations in Paragraph 82 of the Complaint.

83.     UPS denies the allegations in Paragraph 83 of the Complaint.

84.     UPS denies the allegations in Paragraph 84 of the Complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

85.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 84 the Complaint.

86.     UPS denies the allegations in Paragraph 86 of the Complaint.

87.     UPS denies the allegations in Paragraph 87 of the Complaint.

88.     UPS denies the allegations in Paragraph 88 of the Complaint.

89.     UPS denies the allegations in Paragraph 89 of the Complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision)

90.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 89 the Complaint.

91.     UPS denies the allegations in Paragraph 91 of the Complaint, except admits that Defendant Cleary has been an employee of UPS at least since January 1, 2004.

92.     UPS denies the allegations in Paragraph 92 of the Complaint, except admits that Defendant Dedier has been an employee of UPS at least since January 1, 2004.

93.     UPS denies the allegations in Paragraph 93 of the Complaint.

94.     UPS denies the allegations in Paragraph 94 of the Complaint.

95.     UPS denies the allegations in Paragraph 95 of the Complaint.

96.     UPS denies the allegations in Paragraph 96 of the Complaint.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Punitive Damages)

97.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 96 the Complaint.

98.     UPS denies the allegations in Paragraph 98 of the Complaint.

99.     UPS denies the allegations in Paragraph 99 of the Complaint.

With respect to the WHEREFORE paragraph following Paragraph 99 of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedies or relief.

## DEFENSES AND AFFIRMATIVE DEFENSES

100.     The Complaint fails to state a claim upon which relief can be granted.

101.     The Court lacks personal jurisdiction over the Defendants.

102.    Defendants United Parcel Service of America, Inc. and United Parcel Service Co. are not proper parties to this litigation as they do not employ Defendants Dedier and Cleary (nor did they employ Plaintiff), and had no involvement whatsoever in the investigation of Plaintiff's misconduct and his voluntary resignation from UPS.

103.    Plaintiff's claims are barred in whole or in part by the exclusive remedies provision of New York's Workers' Compensation Law.

104.    Plaintiff's claims are preempted under federal labor law, including without limitation, Section 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185, and Sections 7 and 8 of the National Labor Relations Act ("NLRA"), 28 U.S.C. §§ 157, 158.

105.    On the facts alleged, Plaintiff is not entitled to any of the relief requested in the Complaint.

106.    Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

107.    Plaintiff's claims are barred, in whole or in part, by laches, waiver, release, arbitration and award, the existence of an applicable collective bargaining agreement, satisfaction and accord, estoppel, res judicata, collateral estoppel, and/or unclean hands.

108.    Plaintiff's claims are barred in whole or in part by Plaintiff's failure to do equity.

109.    On the facts alleged, Plaintiff is not entitled to the compensatory and punitive damages requested in the Complaint, or any other relief.  Indeed, there is no basis, in law or in fact, to support Plaintiff's claims for punitive damages.  UPS did not engage in any unlawful practices with malice or with reckless indifference to Plaintiff's rights.

110.    The Amended Complaint fails to state a claim upon which attorneys' fees or costs can be awarded.

111.    Any damages that Plaintiff could recover are barred or reduced by his failure to mitigate damages.

112.    Plaintiff is not entitled to any recovery because any alleged acts or omissions by Defendants were privileged, did not breach any duties owed to Plaintiff or others, and were made in good faith, in conformity with and reliance on applicable administrative regulations, orders, rulings, approvals or interpretations, or administrative practice or enforcement policies.

113.    UPS is not liable under 42 U.S.C. § 1983 because any alleged acts or omissions by UPS were not taken under color of state law.

114.    Plaintiff's false imprisonment claims are barred in whole or in part by the doctrines of consent, privilege and legal justification.

115.    Plaintiff's malicious prosecution claims are barred in whole or in part because of the existence of probable cause, because Plaintiff's criminal proceeding did not result in a favorable termination, and because of the absence of actual malice on the part of UPS.

116.    All or part of Plaintiff's claims are barred under the *de minimis* doctrine.

117.    Defendant UPS is not liable to Plaintiff for the acts or omissions of any supervisory or managerial employee which were beyond the scope of employment and hence, any such conduct may not be attributed to UPS through principles of agency, *respondeat superior*, or otherwise.

118.    The alleged acts or omissions of Defendants were not the proximate cause of any injuries or damages allegedly incurred by Plaintiff.

119.    To the extent, if any, Plaintiff has suffered any damages and/or losses, such damages and losses were a result of Plaintiff's own conduct and/or omissions.

120.    Defendants reserve the right to add, alter and/or amend their defenses and affirmative defenses as the course of discovery so requires.

## AS AND FOR A FIRST COUNTERCLAIM BROUGHT BY DEFENDANT UNITED PARCEL SERVICE, INC.
### (Breach of Fiduciary Duty of Loyalty)

121.    Defendant United Parcel Service, Inc. repeats and realleges their answers, defenses, and allegations set forth in paragraphs 1 through 120 of the Proposed Amended Answer and Counterclaim, as if fully set forth herein.

122.    As a UPS employee, Plaintiff owed UPS the duty of utmost good faith and loyalty in the performance of his duties.

123.    On or about August 15, 2005, Murray began work with UPS as a cover driver in the Metro New York district, Manhattan North facility, assigned to cover routes for other drivers who were on vacation or extended leave.

124.    Upon commencement of his employment, Murray signed a Policy Acknowledgement form agreeing "to comply with all applicable policies, rules, regulations, and procedures of the Company", including without limitation, UPS's honesty in employment policy.

125.    As a cover driver, Murray selected which route he wanted to take from a number of available routes.  Beginning in or around mid-2006, Murray began to cover a route in the Washington Heights area of Manhattan.  While assigned to the Washington Heights route, Murray was responsible for delivering packages to, and picking packages up from, UPS customers along his route.

126.    During his stint covering the Washington Heights route, Murray – by his own admission – became friendly with an individual later identified as third-party defendant Jose Beato and frequently diverted cell phone packages to Beato, rather than delivering them to their intended recipients.

127.    In or around December 2006, UPS commenced an investigation based on information provided to its Security Department that Murray was potentially involved in a scheme to steal fraudulently ordered cell phones.  As part of the investigation, on December 28, 2006, UPS retained a private investigator to conduct video surveillance of Murray while on his route in Washington Heights.

128.    Surveillance was conducted on December 29, 2006, and again on January 2, 5, 29 and February 2, 2007.  The surveillance revealed that on December 29, 2006, January 5, 2007, and February 2, 2007, Murray released a total of eleven (11) clearly marked packages containing Sprint cellular phones to Beato directly from his package delivery vehicle *without verifying that Beato was the intended recipient – and indeed with full knowledge that the packages were not intended for Beato –* in violation of Company policy.

129.    On December 29, 2006, after receiving cell phones from Murray, Beato was observed entering a G & P Cell Center with the Sprint packages and exiting without the cell phones. On February 2, 2007, a similar pattern occurred, as. Beato received six (6) cell phones from Murray and was observed entering G & P Cell Center and taking Sprint packages out of his backpack and placing them on the store counter.

130.    Indeed, all eleven (11) cell phone packages released on December 29, 2006, January 5, 2007 and February 2, 2007 were delivered to Beato in the same manner.  Murray was

not observed, nor did he ever claim, to have delivered packages *other than* cell phones to Beato despite (i) Murray's claim that Beato was allegedly a so-called "super-helper" who worked in a building along Murray's route, and (ii) the fact that on certain days in question there were also non-Sprint cell phone packages on his vehicle to be delivered to the same buildings which were *not* given to Beato.  Under these circumstances, Murray simply could not legitimately believe that Beato was in fact a "super-helper."  The eleven (11) fraudulently ordered phones seen delivered by Murray to Beato on December 29, 2006, January 5, 2007, and February 2, 2007 were valued at $5,910.

131.    Further investigation revealed that the "ship to" addresses for the eleven packages released to Beato were all, in fact, fictitious.  In all eleven (11) cases, either the names on the packages did not correspond with the name at the "ship to" address or the apartments simply did not exist in the buildings to which the packages were addressed.

132.    On February 2, 2007, the six (6) cell phone packages released to Beato within 30 minutes of one another were, in fact, addressed to six (6) different addresses on West 188th and 190th Streets.  In spite of this, Murray nevertheless delivered them all to Beato *without* verifying identification and knowing full well that the packages were not addressed to him.  Murray also did not verify that the intended recipients reside at the location to which the packages were addressed, nor did he leave any notes for them informing them a delivery attempt.

133.    During its investigation, UPS also contacted Sprint's Security Department and confirmed that the packages seen delivered to Beato were fraudulently ordered insurance replacement phones – *i.e.*, replacement phones ordered through an insurance program for damaged, lost or stolen cell phones.

134.    Unfortunately, scams such as that perpetrated by Murray and Beato are not uncommon in the delivery industry.  Typically, the scheming party obtains a Sprint Customer's account information and surreptitiously orders replacement phones through Sprint's insurance carrier (e.g., Asurion Corp.) using the customer's information.  The scheming party then requests that the replacement phones be shipped to a location other than the address associated with the customer's account.  In this case, third-party defendant Beato met Murray on his delivery route and obtained the fraudulently ordered cell phones directly from him.  In order for this scam to succeed, the driver delivering the packages must be a willing participant, as he or she must be willing to violate UPS policy by delivering multiple packages to one individual who lacks proper identification.

135.    On February 2, 2007, UPS Security interviewed Murray regarding his role in this scheme. During the interview, Murray readily admitted, in a written statement, that "for about a year [Jose Beato] would come up to [the] truck, 2 maybe 3 times a week" and that Murray "would deliver packages to him, mostly cell phones" without requesting proper identification, or otherwise verifying that Beato was the intended recipient.  Indeed, Murray even acknowledged that he "realized that [Beato's] I.D. didn't match the package he got from [Murray]."

136.    When it was apparent to Murray that his involvement in the scam had been exposed, he voluntarily resigned from UPS, effective immediately.

137.    Following the interview, Murray, Beato, and an employee of G & P Cell Center were all arrested and taken into custody by the New York City Police Department ("NYPD") in connection with their scheme.

138.    Plaintiff knew or should have known that his conduct was in furtherance of an unlawful scheme perpetrated by means of UPS's package delivery system.

139.    Plaintiff breached his fiduciary duty of loyalty to the company and defrauded UPS, its investors, its customers and Sprint and Asurion Corp by affirmatively engaging in the aforementioned scheme.

140.    Plaintiff's disloyal activity was conducted during working hours, using UPS's vehicles and equipment and materially and substantially permeated his services as a driver for UPS.

141.    By reason of the foregoing, UPS has been damaged in an amount to be determined at trial, including but not limited to, all compensation received by Plaintiff's during the period of his disloyalty including salary, benefits and other perquisites as well as all expenses incurred by UPS during the course of its investigation into plaintiff's misconduct, including costs associated with retaining a private investigator, in an amount to be determined by the Court, together with all other remedies deemed appropriate by the Court.

WHEREFORE, having fully answered the Amended Complaint, Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice, or in the alternative, that each and every request for relief in the Amended Complaint be denied, that all costs and attorneys' fees be awarded to Defendants against Plaintiff, that all relief with respect to Defendants' Counterclaim be granted, and that the Court grant such other relief as it may deem just and proper.

Dated:  New York, New York
        July 9, 2008

Respectfully submitted,

By: _____

Richard J. Rabin, Esq.
Evandro Gigante, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Ave.
New York, New York 10022
(212) 872-1000 (tel)
(212) 872-1002 (fax)

*Attorneys for Defendants United Parcel Service, Inc., United Parcel Service of America, Inc., and United Parcel Service Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEITH MURRAY,                                          :
                                                       :
              Plaintiff,                               :        NO. 08-CV-02160 (LAK)
                          -against-                    :
                                                       :
UNITED PARCEL SERVICE OF AMERICA, INC., :
UNITED PARCEL SERVICE, INC., UNITED                    :
PARCEL SERVICE CO.,                                    :
                                                       :
                          Defendants.                  :
-----------------------------------------------------------x
-----------------------------------------------------------x
UNITED PARCEL SERVICE, INC.,                           :
                                                       :
              Third-Party Plaintiff,                   :
                                                       :
                  -against-                            :
                                                       :
                                                       :
JOSE BEATO,                                            :
                                                       :
              Third-Party Defendant.                   :
                                                       :
                                                       :
-----------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

I, Richard J. Rabin, hereby certify that on July 9, 2008, I caused true and correct copies of

the following :

1.    Notice of Motion

2.    Declaration of Richard J. Rabin, Esq. and attached exhibits

3.    Memorandum of Law on Behalf of Defendants' United Parcel Service of
      America, Inc., United Parcel Service, Inc., and United Parcel Service Co.

to be served via United Parcel Service Overnight Delivery upon the following:

Adam Richards

1

ADAM RICHARDS LLC
40 Fulton Street, 7th Floor
New York, New York  10038
*Attorney for Plaintiff*

Dated: New York, New York
      July 9, 2008

By: _____
        Richard J. Rabin (RR-0037)
        Evandro C. Gigante (EG-7402)
        AKIN GUMP STRAUSS HAUER & FELD LLP
        590 Madison Avenue
        New York, New York 10022
        (212) 872-1000 (Telephone)
        (212) 872-1002 (Facsimile)
        Email: rrabin@akingump.com
              egigante@akingump.com

        *Attorneys for Defendants United Parcel Service of America, Inc., United Parcel Service, Inc., and United Parcel Service Co.*

2