Richard J. Rabin (RR-0037)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000

*Attorneys for Defendants United Parcel Service of America, Inc., United Parcel Service, Inc., and United Parcel Service Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
KEITH MURRAY,

                Plaintiff,

          -against-

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED PARCEL SERVICE, INC., AND UNITED
PARCEL SERVICE CO.,

                Defendants.
------------------------------------------------------------- x
------------------------------------------------------------- x
UNITED PARCEL SERVICE, INC.,

                Third-Party Plaintiff,

          -against-

JOSE BEATO,

                Third-Party Defendant.

------------------------------------------------------------- x

NO. 08-CV-02160 (LAK)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIM**

1

Defendants United Parcel Service, Inc. ("UPS, Inc." or the "Company"), United Parcel Service of America, Inc. and United Parcel Service Co. (collectively "Defendants") by and through their attorneys, Akin Gump Strauss Hauer & Feld LLP, submit this memorandum of law in support of their motion for leave to file an Amended Answer and Counterclaim (the "Answer and Counterclaim"), pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.[1] The assertion of this Counterclaim by UPS, Inc. is necessary to fully and finally resolve all disputes between the parties in one proceeding.

## PRELIMINARY STATEMENT

This is an action in which the nominal Plaintiff Keith Murray ("Murray"), attempts to blame the victim, UPS, Inc., for Murray's own egregious breaches of his duty of loyalty to the Company.

Murray is a former UPS, Inc. driver who abused his position of trust as a UPS, Inc. delivery driver by delivering fraudulently ordered Sprint cell phones to his friend and accomplice, Jose Beato, presumably for resale and personal profit. Upon learning of this scam, UPS, Inc. investigated the incident and captured Murray's unlawful conduct on videotape. In a subsequent interview, Murray *admitted* much of the above, including his routine delivery of cell phones to Beato rather than the intended recipients of the cell phone packages. He then promptly resigned from the Company. Believing Murray's conduct also was criminal in nature, UPS, Inc. contacted the appropriate authorities, who arrested and booked Murray and Beato for their conduct.

---

[1] Pursuant to the Court's Individual Practice Rules, copies of the summons and First Amended Complaint are attached as Exh. 1 to the accompanying Declaration of Evandro C. Gigante, Esq. ("Gigante Decl."). Defendants' Proposed Answer and Counterclaim is attached as Exh. 2 to the Gigante Decl.

Against this backdrop, *Murray* somehow found the temerity to sue UPS, Inc., alleging *UPS, Inc.* had violated *his* rights. UPS, Inc. retained counsel and answered Murray's Complaint in March 2008, and discovery now has begun. Upon examining the case, conducting factual due diligence, obtaining discovery from Murray, and considering its rights under the law, UPS, Inc. has decided to bring an action against Murray for his breach of the duty of loyalty and the various damages his conduct has caused UPS, Inc. Such claims are timely under the governing (six year) statute of limitations and are otherwise proper. *See, e.g., Phansalkar v. Anderson Weinroth & Co., L.P.*, 344 F.3d 184, 200-03 (2d Cir. 2003). Bringing these claims in this suit, rather than in a new action filed in state court, will advance judicial economy and ensure the prompt and efficient resolution of all claims between the parties.

For these reasons, among the other reasons set forth below, UPS, Inc. respectfully requests that its motion for leave to amend its answer to add counterclaims be granted.

## FACTUAL BACKGROUND

On or about August 15, 2005, Murray began work with UPS, Inc. as a cover driver in the Metro New York District, Manhattan North facility, assigned to cover routes for other drivers who were on vacation or extended leave. Upon commencement of his employment, Murray signed a Policy Acknowledgement form agreeing "to comply with all applicable policies, rules, regulations, and procedures of the Company", including without limitation, UPS, Inc.'s honesty in employment policy.

As a cover driver, Murray selected which route he wanted to drive from a number of available routes. Beginning in or around mid-2006, Murray began to cover a route in the Washington Heights area of Manhattan. While assigned to the Washington Heights route,

Murray was responsible for delivering packages to, and picking packages up from, UPS, Inc. customers along his route. During his stint covering the Washington Heights route, Murray – by his own admission – frequently diverted cell phone packages to an individual on the street (later identified as Jose Beato, who UPS has sued separately as a Third-Party Defendant) in violation of Company policy and in furtherance of a scheme to obtain and sell fraudulently ordered cell phones.

In or around December 2006, UPS, Inc. commenced an investigation based on information provided to its Security Department that Murray was potentially involved in a scheme to steal fraudulently ordered cell phones. As part of the investigation, on December 28, 2006, UPS retained a private investigator to conduct video surveillance of Murray while on his route in Washington Heights. Surveillance was conducted on December 29, 2006, and again on January 2, 5, 29 and February 2, 2007. The surveillance revealed that on December 29, 2006, January 5, 2007, and February 2, 2007, Murray released a total of eleven (11) clearly marked packages containing Sprint cellular phones to Beato directly from his package delivery vehicle *without verifying that Beato was the intended recipient – and indeed with full knowledge that the packages were not intended for Beato* – in violation of Company policy, and in furtherance of an apparent scam to defraud Sprint and its insurer, Asurion Corp.

On December 29, 2006, after receiving cell phones from Murray on the street, Beato was observed entering a cell phone store, G & P Cell Center, with the Sprint packages and exiting without the cell phones. On February 2, 2007, a similar pattern occurred, as Beato received six (6) cell phones from Murray and was observed entering G & P Cell Center and taking Sprint packages out of his backpack and placing them on the store counter. Indeed, all eleven (11) cell

4

phone packages released on December 29, 2006, January 5, 2007 and February 2, 2007 were delivered to Beato in the same manner.

Murray was not observed, nor did he ever claim, to have delivered packages *other than* cell phones to Beato despite (i) Murray's claim that Beato was allegedly a so-called "super-helper" who worked in a building along Murray's route, and (ii) the fact that on certain of days in question there were also non-Sprint cell phone packages on his vehicle to be delivered to the same buildings which were *not* given to Beato. Under these circumstances, Murray simply could not legitimately believe that Beato was in fact a so-called "super-helper." The eleven (11) fraudulently ordered phones delivered by Murray to Beato here were valued at $5,910.

Further investigation revealed that the "ship to" addresses for the eleven packages released to Beato were all, in fact, fictitious. Indeed, in all eleven (11) cases, either the names on the packages did not correspond with the name at the intended address or the apartments simply did not exist in the buildings to which the packages were addressed. Moreover, on February 2, 2007, the six (6) cell phone packages released to Beato within 30 minutes of one another were, in fact, addressed to six (6) different addresses on West 188th and 190th Streets. In spite of this, Murray nevertheless delivered them all to Beato *without* verifying identification and knowing full well that the packages were not addressed to him. Murray also did not verify that the intended recipients of these packages reside at the location to which the packages were addressed, nor did he leave any notes for them informing them a delivery attempt.

During its investigation, UPS, Inc. also contacted Sprint's Security Department and confirmed that the packages that were seen delivered to Beato were fraudulently ordered

5

insurance replacement phones – *i.e.*, replacement phones ordered through an insurance program for damaged, lost or stolen cell phones.

Unfortunately, scams such as that perpetrated by Murray and Beato are not uncommon in the delivery industry. Typically, the scheming party obtains a Sprint Customer's account information and surreptitiously orders replacement phones through Sprint's insurance carrier (e.g., Asurion Corp.) using the customer's information. The scheming party then requests that the replacement phones be shipped to a location other than the address associated with the customer's account. In this case, Beato repeatedly met Murray on his delivery route and obtained the packages directly from him. In order for this scam to succeed, the driver delivering the packages must be a willing participant, as he or she must be willing to violate UPS, Inc. policy by delivering multiple packages to one individual who lacks proper identification.

On February 2, 2007, representatives of UPS, Inc.'s Security Department interviewed Murray regarding his role in this scheme. During the interview, Murray readily admitted, in a written statement, that "for about a year [Jose Beato] would come up to [the] truck, 2 maybe 3 times a week" and that Murray "would deliver packages to him, mostly cell phones" without requesting proper identification, or otherwise verifying that Beato was the intended recipient. Indeed, Murray even acknowledged that he "realized that [Beato's] I.D. didn't match the package he got from [Murray]." When it was apparent to Murray that his involvement in the scam had been exposed, he voluntarily resigned from UPS, Inc., effective immediately. Following the interview, Murray, Beato, and an employee of G & P Cell Center were all arrested and taken into custody by the New York City Police Department ("NYPD") in connection with their scheme.

Despite these facts, on January 30, 2008, Murray filed a Complaint in the Supreme Court of the State of New York (Bronx County) against UPS, Inc. alleging that *UPS, Inc.* had violated *Murray's* rights. *See* Gigante Decl. Exh. 1. Murray's claims all arise in connection with UPS, Inc.'s investigation into his package delivery practices and his subsequent arrest by the NYPD.

On March 4, 2008, Defendants removed the action to the U.S. District Court for the Southern District of New York based on this Court's federal question jurisdiction under 28 U.S.C. § 1331. On March 11, 2008, Defendants filed an Answer to Murray's Complaint.

**ARGUMENT**

**I.    LEAVE TO AMEND SHOULD BE GRANTED PURSUANT TO FED. R. CIV. P. 15**

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure ("F.R.C.P."), a party seeking to amend its pleadings may do so with leave of the Court.[2] *See* F.R.C.P. 15(a)(2). Moreover, a prescribed by the Rule, a court "should freely give leave when justice so requires." *See id.; see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that "leave to amend shall be freely given when justice so requires; this mandate is to be heeded."); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

As emphasized by the Supreme Court, leave should be given "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant. . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility. . . ." *Foman*, 371 U.S. at 182; *see also Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 97 C.V. 2067, 1997 WL 53184, at *2 (S.D.N.Y. Feb. 10, 1997) (stating leave to amend

---

[2] Pursuant to F.R.C.P. 15(a)(2), amendment is also permitted where the party seeking to amend obtains consent from its adversary. Here, Murray's counsel has refused to give consent to UPS, Inc.'s proposed amendment.

7

should be granted liberally absent undue delay, bad faith, dilatory motive or undue prejudice to opposing party).

Leave to amend clearly is appropriate under this standard. This action is still early, having been pending for less than five months and not a single deposition having been taken and document discovery underway. *See e.g., Campers' World Int'l. Inc. v. Perry Ellis Int'l Inc.,* No 02 Civ. 453, 2003 WL 21403959, at *8 (S.D.N.Y. June 18, 2003) ("[t]hree months does not constitute undue delay"). Moreover, Murray was advised several weeks ago that UPS, Inc. planned to file this Counterclaim, so there is no unfair surprise and no prejudice. To the contrary, it would be far more economical for the parties and the court system to resolve all issues between the parties in one court case, rather than multiple proceedings in state and federal court.

Finally, there is undoubtedly no bad faith associated with UPS, Inc.'s proposed Counterclaim. The proposed Counterclaim is well-founded and non-frivolous – particularly in light of Murray's own admission regarding his package delivery practices and the convincing evidence that Murray was in fact involved in the scam with his admitted friend, and accomplice, Jose Beato. Courts in this jurisdiction and elsewhere have permitted recovery in situations such as this one, where an employee acts in a disloyal fashion in a way that damages his or her employer. *See supra* Part II, below. Indeed, among the appropriate remedies in such a case are the return of all compensation paid to the employee during the period of disloyalty and any damages suffered by the company as a result of the plaintiff's conduct, among others. *See Phansalkar*, 344 F.3d at 204-05.

## II.     THE PROPOSED DUTY OF LOYALTY CLAIM AGAINST MURRAY SHOULD BE PERMITTED

In deciding whether to allow an amendment to proceed, a court need not involve itself in evaluating the merits of the new claim, but instead should determine whether the proposed claim is colorable and otherwise not frivolous or futile. *See Sumitromo Electric Research Triangle, Inc. v. Corning Glass Works*, 109 F.R.D. 627, 628 (S.D.N.Y. 1986) ("on a motion for leave to amend, the court need not finally determine the merits of the proposed claim or defense, but merely satisfy itself that it colorable and not frivolous."). Here, UPS, Inc.'s Counterclaim readily satisfies this standard.

It is well-settled that "an employee owes his employer good faith and loyalty." *British American & Eastern Co., Inc. v. Wirth Ltd.*, 592 F.2d 75 (2d Cir. 1979); *see e.g., Rogers v. Lenox Hill Hosp.*, 239 A.D.2d 140, 142 (1st Dep't 1997). Indeed, fundamental to the notion of an employment relationship is the proposition that "an employee is to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *Id. quoting, Lamdin v. Broadway Surface Adv. Corp.*, 5 N.E.2d 66 (1936). Here, Murray clearly failed to satisfy this standard.

As noted above, Murray abused his position of trust at UPS, Inc., and his role as a UPS, Inc. driver, by quarterbacking a scheme to divert packages to his friend and accomplice, Jose Beato, for personal gain. Murray repeatedly and admittedly violated his obligations as a UPS, Inc. driver by delivering clearly marked cell phone packages to Beato on the street without obtaining proper identification, *and indeed with full knowledge that Beato was not the intended recipient of the packages*. He did so without making any effort to leave a delivery notification as required by UPS, Inc., or otherwise verify that the intended recipients resided in the buildings to which the cell phone packages were addressed. Murray knew or should have known that his

conduct, while employed by UPS, Inc. (and while entrusted with the parcels of UPS, Inc.'s customers) was in furtherance of a conspiracy to defraud UPS, Inc. and its customers as well as Sprint, Sprint's cell phone customers and its insurance company, Asurion Corp. By repeatedly and routinely delivering packages as described above – approximately 2 to 3 times per week for an entire year – Murray's conduct permeated his service to the Company in its most material and substantial part – *i.e.*, the delivery of UPS, Inc. packages. *See Sanders v. Madison Square Garden, L.P.*, No. 06 Civ. 589, 2007 WL 1933933, at *3 (S.D.N.Y. July 2, 2007) (*quoting Phansalkar*, 344 F.3d at 203). Murray thus breached his duty of loyalty to the Company and should be required to forfeit any compensation he received from UPS, Inc. during the period of his disloyalty, among other proper relief. *See Lamdin*, 272 N.Y. at 138; *see also Phansalkar*, 344 F.3d at 199-200; *Harry R. Defler Corp. v. Kleeman*, 19 A.D.2d 396, 404(4th Dep't 1963).

## CONCLUSION

For the foregoing reasons, UPS, Inc. respectfully requests that leave be granted allowing it to file and serve the Proposed Amended Answer and Counterclaims.

Dated: New York, New York
July 9, 2008

Respectfully submitted,

By: _____
Richard J. Rabin, Esq.
Evandro Gigante, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Ave.
New York, New York 10022
(212) 872-1000 (tel)
(212) 872-1002 (fax)

*Attorneys for Defendants United Parcel Service of America, Inc., United Parcel Service, Inc., and United Parcel Service Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KEITH MURRAY,

       Plaintiff,

          -against-

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED PARCEL SERVICE, INC., UNITED
PARCEL SERVICE CO.,

                     Defendants.
------------------------------------------------------------x
------------------------------------------------------------x
UNITED PARCEL SERVICE, INC.,

       Third-Party Plaintiff,

          -against-

JOSE BEATO,

       Third-Party Defendant.
------------------------------------------------------------x

NO. 08-CV-02160 (LAK)

## CERTIFICATE OF SERVICE

I, Richard J. Rabin, hereby certify that on July 9, 2008, I caused true and correct copies of the following :

    1.    Notice of Motion

    2.    Declaration of Richard J. Rabin, Esq. and attached exhibits

    3.    Memorandum of Law on Behalf of Defendants' United Parcel Service of America, Inc., United Parcel Service, Inc., and United Parcel Service Co.

to be served via United Parcel Service Overnight Delivery upon the following:
                     Adam Richards

1

ADAM RICHARDS LLC
40 Fulton Street, 7th Floor
New York, New York 10038
*Attorney for Plaintiff*

Dated: New York, New York
July 9, 2008

By: _____
Richard J. Rabin (RR-0037)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Email: rrabin@akingump.com
       egigante@akingump.com

*Attorneys for Defendants United Parcel Service of America, Inc., United Parcel Service, Inc., and United Parcel Service Co.*