ADAM RICHARDS LLC
Adam Richards (AR-2489)
40 Fulton Street, 7th Floor
New York, New York 10038
Telephone: (212) 233-4400
adam@arichardslaw.com

Attorneys for Plaintiff Keith Murray

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH MURRAY,<br><br>       Plaintiff,<br><br>- against -<br><br>UNITED PARCEL SERVICE OF AMERICA, INC., UNITED PARCEL SERVICE, INC., and UNITED PARCEL SERVICE CO.,<br><br>       Defendants. | **Index No. 08 CV 02160 (LAK)(DFE)** |
| UNITED PARCEL SERVICE, INC.,<br><br>       Third-Party Plaintiff,<br><br>- against -<br><br>JOSE BEATO,<br><br>       Third-Party Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND
<u>COUNTERCLAIM</u>**

Plaintiff Keith Murray ("Plaintiff") respectfully submits this memorandum of law in opposition to the Motion of Defendants United Parcel Service Of America, Inc., United Parcel Service, Inc., and United Parcel Service Co., (collectively, "UPS") for leave to file an amended answer and counterclaim.

**Preliminary Statement**

On or about August 23, 2007, when the criminal case against Plaintiff was formally sealed and dismissed, the New York District Attorney's Office dropped all charges against Plaintiff. Prior to that, on July 30, 2007, Administrative Law Judge Diane Dubiac, sitting for the Unemployment Insurance Board found after a full evidentiary hearing that Plaintiff had not engaged in misconduct, much less acts worthy of his arrest and imprisonment. Apparently, none of this has any moment for UPS. UPS is sticking to its story, already rejected by the DA's office and by ALJ Dubiac, that Plaintiff was engaged in a "cell-phone scam" from his delivery truck and now seeks to counter-sue Plaintiff, now unemployed and without a permanent abode, for Plaintiff's alleged breach of loyalty. Apparently, the destruction of Plaintiff's career and his false imprisonment is not enough for his vengeful former employer. Among other things, UPS now seeks to recoup from Plaintiff all compensation earned by Plaintiff during his employment with UPS and seeks to stick Plaintiff for the fees of the private investigators it used to covertly surveil Plaintiff while on his delivery route.

The motion should be denied since it has been brought in bad faith. The allegations underlying the proposed counterclaim have been known to UPS since at least February 2, 2007, the date of Plaintiff's wrongful arrest. The proposed counterclaim could and should have been brought at the initial pleadings stage of the case. The vast majority of documents produced to UPS by Plaintiff were either documents produced by UPS pursuant to Plaintiff's subpoena in the criminal case, or documents already in UPS' possession. UPS cannot with a straight face claim that the proposed counterclaim is occasioned by the discovery of new evidence. Rather, the motion has been brought now,

hard on the heels of an adverse ruling by the Court, and hard on the heels of the production by Plaintiff of his expert reports, to bully and intimidate Plaintiff in retaliation for Plaintiff "having the temerity to sue UPS" as UPS states in its motion. UPS' first investigation of Plaintiff failed to produce any evidence of misconduct on Plaintiff's part. Respectfully, UPS should not be permitted to conduct a second investigation here.

Second, the motion should be denied as it is futile. Even if all the allegations are taken as true, the proposed counterclaim does not allege that Plaintiff competed with UPS during his employment with UPS, it does not allege that Plaintiff denied UPS any corporate or business opportunity while employed at UPS and it does not allege that Plaintiff profited from the so-called "cell phone scam" either for Plaintiff's own benefit or at the expense of UPS while employed there. At best, the proposed counterclaim alleges simply that Plaintiff breached an alleged amorphous "Policy Acknowledgement" concerning UPS's "policies, rules, regulations, and procedures of the company." This allegation alone does not state a claim under New York's faithless servant doctrine.

## Statement of Facts

The following facts are not in dispute:

Plaintiff was employed by UPS for approximately eighteen months as a cover driver on various routes in Manhattan (Counterclaim ¶ 123). One of the cover routes assigned to Plaintiff was in the Washington Heights section of Northern Manhattan (Counterclaim ¶ 125). Apparently, after receiving some type of tip from another UPS employee pursuant to UPS' "Confidential Rewards Program," UPS began to covertly surveil Plaintiff on his delivery route (Richards Dec., Exh. A; Counterclaim ¶ 128). Among other things, the surveillance showed Plaintiff providing individuals with

packages from his truck.  One of those individuals was identified by Plaintiff as Jose Beato, a superintendent's helper at several buildings on Plaintiff's route (Counterclaim ¶ 130).

On February 2, 2007, Plaintiff was apprehended on his delivery route by Thomas Cleary, head of UPS Security, and several other individuals (Answer and Counterclaim ¶ 15).  Plaintiff was asked to accompany Cleary and the other individuals downtown to assist them in an ongoing investigation (Id.).  Plaintiff agreed and provided Cleary with his personal cell-phone since Cleary advised Plaintiff that he did not want Plaintiff to contact anyone (Id.).

Upon arriving at UPS headquarters Cleary, and his assistant, Jillian Dedier, began an interrogation of Plaintiff (Counterclaim ¶ 135).  UPS's internal Investigation Detail Report describes the type of "interview" conducted by Cleary as "accusatory." (Richards Dec., Exh. B [page 2 pf 4]).   According to notes taken by Dedier at the interview, Plaintiff admitted that Beato would approach his truck to pick up packages, that Beato showed Plaintiff his i.d. and tracking numbers for the packages when picking up the packages and that Plaintiff would provide Beato with the packages listed.  (Richards Dec., Exh. C). Plaintiff also told Cleary that he had approached his supervisor about using these procedures to deliver packages and had received approval for using those procedures. (Id.).  After advising Cleary of these facts, Cleary told Plaintiff that Plaintiff had "the opportunity to help [him]self by telling the truth.  We have enough to fire you or lock you up." (Id.).  Plaintiff again emphasized that he was not involved in any fraudulent activities.  (Id.).  Cleary responded by stating that "you are involved because you delivered the packages" and that in so-doing Plaintiff "had bypassed UPS procedures!"

4

(Id.). Thereafter, Plaintiff was asked to put into writing his delivery procedures (Id.). Plaintiff then wrote and signed a written statement detailing what he had told Cleary (Richards Dec., Exh. D; Counterclaim ¶ 135). Plaintiff was then told to resign or face arrest and he resigned. (Counterclaim ¶ 136). Plaintiff was then arrested anyway (Counterclaim ¶ 137).

After UPS challenged Plaintiff's application to receive unemployment benefits an evidentiary hearing was held before ALJ Dubiac of the State of New York Unemployment Insurance Appeal Board on July 27, 2007. Plaintiff appeared for himself. Cleary appeared for UPS. At the hearing, among other things, Cleary testified that; (a) as alleged in the Complaint in this action, Plaintiff spoke with his management supervisor about the delivery practices that were the subject of the UPS investigation and now the subject of the proposed counterclaim; (b) that Plaintiff had made Cleary and his team of investigators aware that Plaintiff had spoken with his management supervisor on this subject; and (c) that Plaintiff's management supervisor acknowledged to Cleary to having had such a discussion. (Richards Dec., Exh. E; pp. 39-41). Cleary also acknowledged to having no knowledge that any money had passed hands between Plaintiff and Beato (Id., at p. 20). On July 30, 2007, ALJ Dubiac issued Findings of Fact that Plaintiff had not engaged in any misconduct and issued a Decision rejecting UPS' objections to Plaintiff receiving unemployment benefits. (Richards Dec., Exh. F).

On or about August 21, 2007, the criminal charges were dropped against Plaintiff by the District Attorney's Office. According to UPS's internal Corporate Security Investigation Detail Report, the charges were dropped because the DA was "unable to

5

prove that Murray had knowledge of criminal acquisition of the items." (See Richards Dec., Exh. B, p.3 of 4).

## Argument

### I. LEAVE TO AMEND THE ANSWER SHOULD NOT BE GRANTED AND THE MOTION SHOULD BE DENIED

A "motion to amend should be denied if there is an 'apparent or declared reason- such as undue delay, bad faith or dilatory motive …, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" Dluhos v. Floating and Abandoned Vessel Known as New York, 162 F.3d 63, 69 (2d Cir. 1998) quoting Forman v. Davis, 371 U.S. 178, 182 (1962). Where the amended pleading would be subject to 'immediate dismissal' for failure to state a claim upon which relief can be granted or on some other basis, the amendment will be deemed futile and the motion to amend denied. Sanders v. Madison Square Garden, L.P., No. 06 Civ. 589 (GEL), 2007 WL 1933933 at *2 (S.D.N.Y., July 2, 2007) (denying motion to amend answer to add counterclaim of employee's breach of duty of loyalty).

Here, the motion should be denied because it because it is futile and has been brought in bad faith.

### A. The Motion is Futile

The motion should be denied as futile since the proposed counterclaim fails to state a claim upon which relief can be granted.

In Sanders v. Madison Square Garden, L.P., No. 06 Civ. 589 (GEL), 2007 WL 1933933 at *2 (S.D.N.Y., July 2, 2007), Judge Lynch recently held that "[t]o show a violation of the faithless servant doctrine, an employer must show (1) that the employee's

6

disloyal activity was related to 'the performance of his duties,' and (2) that the disloyalty 'permeated the employee's service in its most material and substantial part.' Id., at *3 (internal citations omitted). "[N]either operating an outside business nor unethical conduct unrelated to employment violates the faithless servant doctrine unless such business or behavior adversely affects the employee's job performance." Id., at *4., cf. Phansalkar v. Anderson Weinroth & Co., L.P., 344 F.3d 184 (2d Cir. 2003) (merchant banker disregarded affirmative duty to act in employer's best interests where he failed to disclose six different interests or opportunities he received as his employer's representative and withheld cash and stocks that should have been turned over to employer); Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc., 100 A.D.2d 81, 474 N.Y.S.2d 281 (1st Dep't 1984) (employee breached duty of loyalty in creating business entity that competed directly with employer's business and diverted corporate opportunities to competing entity during his employment).

Judge Lynch's decision in Sanders is instructive here. There, like here, Madison Square Garden ("MSG"), the plaintiff's employer moved to amend its answer to assert a counterclaim based upon the faithless servant doctrine. According to MSG, the plaintiff's tax returns obtained in discovery demonstrated that the plaintiff had been involved in a competing business during her employment with UPS and that, as such, the plaintiff had violated MSG's "Employee Code of Conduct." Id., at **1-2.

Judge Lynch held that "[w]hile employers may contractually obligate employees to act in an ethical manner, and condition continued employment on compliance with that requirement, an employee's alleged violation of that requirement does not result in a violation of the faithless servant doctrine unless the employee's unethical conduct

7

"material[ly] and substantial[ly] infringed one her job performance." Id., at *6. MSG's interpretation of the doctrine, according to Judge Lynch, would allow an employer to sue an employee for engaging in any conduct that fell short of the employer's ethical standards. Id.

Like in Sanders, the allegations contained in the proposed counterclaim do not rise to the level of satisfying the faithless servant doctrine. Here, like in Sanders, despite premising its entire counterclaim upon UPS's "honesty in employment policy," (counterclaim ¶ 124), UPS does not seek any damages for any breach of Plaintiff's contractual promise. Indeed, like MSG in Sanders, UPS conspicuously fails to identify any way in which it has suffered any such damage. See Sanders, at *6. Further, also like MSG in Sanders, UPS does not identify any way in which Plaintiff's alleged dereliction of his duties affected his performance. No customer complaints are alleged and there are no allegations of poor work performance other than an alleged violation of UPS' delivery policies and procedures. There is no allegation that Plaintiff personally profited from the alleged cell phone scheme and there is no allegation that Plaintiff's acts caused UPS to suffer a loss of profits or goodwill with any of its customers.

Reflecting the ultimate finding of the DA's office in the criminal case, UPS does not, because it cannot, allege that Plaintiff had any first-hand knowledge of the "scheme" it goes at such pains to describe in the counterclaim. Indeed, at best, when separated from the hyperbole, all UPS alleges is that Plaintiff violated its delivery practices and procedures. Yet, like MSG in Sanders, having accepted the fruits of Plaintiff's labors for almost eighteen months, UPS now argues it is entitled to accept those fruits for free by forcing the forfeiture of all Plaintiff's pay for his entire period of employment as well as

8

attorney and investigator fees. (Counterclaim ¶ 141). This stretches the boundaries of the faithless servant doctrine beyond all recognition. Like in <u>Sanders</u>, the motion to amend should be denied as futile.

  B. <u>The Motion Is Filed in Bad Faith</u>

  UPS' investigation of Plaintiff has already been discredited not only by the decision of the DA's office not to prosecute Plaintiff, but also by the Findings of Fact and Decision of ALJ Dubiac. Now, in seeking to file its proposed counterclaim, UPS apparently intends to re-launch its botched investigation of Plaintiff under the guise of filing a civil suit against him. The motion (as well as the third-party complaint filed against Jose Beato) and the proposed counterclaim is a blatant attempt to intimidate Plaintiff in retaliation for his having "the temerity to sue UPS," as UPS states in its motion. It is the very essence of a bad faith filing and the motion should be denied.

  UPS claims that "upon examining the case, conducting factual due diligence, obtaining discovery from Plaintiff and considering its rights under the law," it had decided to proceed against Plaintiff. But as is amply demonstrated in the proposed counterclaim, UPS was aware of the allegations underlying this counterclaim long before this action was filed. UPS' allegations have already been the subject of the hearing before ALJ Dubiac and were also the subject of investigation by UPS prior to the filing of this case in connection with a proposed arbitration proceeding to be brought by Plaintiff's union. (<u>See</u> Richards Dec. Exh. B, p. 3 of 4). Nothing produced by Plaintiff in discovery has altered those facts. Indeed the vast majority of documents provided to UPS by Plaintiff were documents produced to Plaintiff either by UPS as part of the criminal case instituted against him by UPS or were documents already in UPS' possession. (Richards

9

Dec., ¶ 9). Further, as experienced employment lawyers, counsel to UPS cannot seriously claim that they were not aware of the law relating to the proposed counterclaim prior to filing the initial answer in this case. This counterclaim could have and should have been filed in this case at the pleadings stage.

The timing of UPS' motion should also come as no coincidence. Coming hard on the heels of the production of Plaintiff's expert reports in this case pursuant to the Court's Scheduling Order and soon after this Court's issuance of it's July 9 Order directing the production of the identity of UPS's "confidential informant," it is apparent that UPS has filed this motion now simply in retaliation for Plaintiff pursuing his case and pursuing it aggressively. Not surprisingly, soon after filing the motion UPS served further discovery on Plaintiff in support of its proposed counterclaim seeking, among other things, all Plaintiff's home and cell phone telephone records, and all documents relating to Plaintiff's personal and business contacts. (Richards Dec., Exh. G). That UPS is now seeking a do-over of its discredited investigation could not be more transparent.

The motion should be denied.

Conclusion

For all the foregoing reasons, the motion should be denied and the Court should issue such other and further relief as it deems just and proper.

Dated: New York, New York
      July 23, 2008

                                      Respectfully submitted,

                                      ADAM RICHARDS LLC

                  By:    /s Adam Richards
                           Adam Richards (AR-2489)
                           Attorneys for Plaintiff Keith Murray
                           40 Fulton Street, 7th Floor
                           New York, New York 10038
                           (212) 233.4400