ADAM RICHARDS LLC
Adam Richards (AR-2489)
40 Fulton Street, 7th Floor
New York, New York 10038
Telephone: (212) 233-4400
adam@arichardslaw.com

Attorneys for Plaintiff Keith Murray

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH MURRAY,<br><br>                         Plaintiff,<br><br>- against -<br><br>UNITED PARCEL SERVICE OF AMERICA, INC., UNITED PARCEL SERVICE, INC., and UNITED PARCEL SERVICE CO.,<br><br>                         Defendants. | **Index No. 08 CV 02160 (LAK)(DFE)** |
| UNITED PARCEL SERVICE, INC.,<br><br>                         Third-Party Plaintiff,<br><br>- against -<br><br>JOSE BEATO,<br><br>                       Third-Party Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO
<u>DISMISS DEFENDANT'S COUNTERCLAIM</u>**

Plaintiff Keith Murray ("Plaintiff") respectfully submits this memorandum of law in support of his motion brought pursuant to Fed. R. Civ. P. 12(b) (6) to dismiss the counterclaim of Defendants United Parcel Service of America, Inc., United Parcel Service, Inc., and United Parcel Service Co., (collectively, "UPS").

**Preliminary Statement**

Even if all the allegations in the counterclaim are taken as true, UPS has not stated a claim for a breach of the duty of loyalty Plaintiff owed to it.  As set forth below, New York law limits this type of claim to cases where the employee unfairly competes with the employer, diverts business opportunities from his employer on behalf of himself or others or otherwise misappropriates the profits of his employer.  Here, when stripped bare, UPS alleges simply that Plaintiff delivered a total of eleven packages containing cell phones to an individual from his delivery truck without ascertaining that the addresses on the "ship to" labels matched the actual addresses of the customers.   In so-doing, UPS alleges that Plaintiff breached a "Policy Acknowledgement" signed by Plaintiff upon his employment with UPS concerning UPS's "policies, rules, regulations, and procedures of the company."  Under the recent law of this Circuit, these allegations do not come close to stating a claim under New York's faithless servant doctrine.

As it did during their botched investigation of Plaintiff, UPS attempts to tack on a claim that, in addition to his violation of company procedure and policy, Plaintiff was somehow involved in a wide-ranging fraudulent scheme involving the cell-phones.  However, other than the single conclusory statement that Plaintiff "knew or should have known" that he was involved in the type scam UPS describes in its counterclaim, there is not a single substantive allegation that Plaintiff had any knowledge of the scheme, that he personally profited from the scheme or that the scheme damaged UPS in any capacity.

In addition to being vindictive and retaliatory, the counterclaim fails to state a claim upon which relief can be granted.  It should be dismissed.

**Statement of Facts**

2

Taking the allegations of UPS as true, along with the admissions of UPS contained in its Answer and other submissions to the Court by UPS in this action, the facts pertinent to UPS' counterclaim against Plaintiff are as follows:

On or about August 15, 2008, Plaintiff began work as a cover driver for UPS (Counterclaim ¶ 123). As a cover driver, Plaintiff was assigned to cover routes for other drivers on vacation or on extended leave (Id.). One of the routes assigned to Plaintiff was in the Washington Heights section of Manhattan (Answer ¶ 10; Counterclaim ¶ 125). Upon commencement of his employment, Plaintiff signed a Policy Acknowledgment form agreeing "to comply with all applicable policies, rules, regulations, and procedures of the Company" including UPS' honesty in employment policy (Counterclaim ¶ 124).

Sometime in December 2006, pursuant to a "Confidential Rewards Program" implemented by UPS, UPS received a tip from another UPS employee that Plaintiff was allegedly "potentially involved in a scheme to steal fraudulently ordered cell phones" (Counterclaim ¶ 124; July 7, 2008 letter from Richard A. Rabin to the Court). Covert surveillance was conducted on Plaintiff by UPS from December 29, 2006 through January and early February 2007 (Counterclaim ¶ 128). During that time, the surveillance revealed that Plaintiff handed a total of eleven (11) packages containing cell phones to an individual later identified by Plaintiff as Jose Beato (Id.). The cell phones had a value of $5,910 (Counterclaim ¶ 130). According to Plaintiff, he knew Beato to be a building superintendent's "helper" for a number of buildings along the route (Id.). The names on "ship-to" addresses on the eleven packages did not correspond with the names at the addresses to which the eleven packages were addressed (Counterclaim ¶ 130).

On February 2, 2007, Plaintiff was apprehended on his delivery route by Thomas Cleary, head of UPS Security, and several other individuals (Answer ¶ 15). Plaintiff was asked to accompany Cleary and the other individuals to UPS headquarters to assist them in an ongoing investigation (Id.). Plaintiff agreed and provided Cleary with his personal cell-phone since Cleary advised Plaintiff that he did not want Plaintiff to contact anyone (Id.).

Upon arriving at UPS headquarters Cleary, and his assistant, Jillian Dedier, began an interrogation of Plaintiff (Answer ¶ 14; Counterclaim ¶ 135). During the interrogation, Plaintiff admitted that Beato regularly approached his truck and that Plaintiff regularly gave him packages from the truck upon Beato showing identification to Plaintiff (Counterclaim ¶ 135). Plaintiff denied being involved in any criminal activity (Answer ¶ 25). At the conclusion of the interrogation, police officers from the New York City Police Department entered the interview room and placed Plaintiff under arrest (Answer ¶ 24). Plaintiff was then handcuffed and escorted out of UPS headquarters (Answer ¶ 27).

According to UPS, "Plaintiff knew or should have known that his conduct (his delivery of the eleven (11) cell phones to Beato) was "in furtherance of an unlawful scheme perpetrated by means of UPS's package delivery system" (Counterclaim ¶ 138). As a result of this, UPS claims that it has incurred damages by virtue of having been "defrauded" by Plaintiff (Counterclaim ¶ 139).

UPS seeks to recoup all compensation paid to Plaintiff "during his period of disloyalty," as well as all the expenses incurred by UPS during its investigation of

4

Plaintiff, including the costs associated with UPS's retention of a private investigator (Counterclaim ¶ 141).

## Argument

I. THE COUNTERCLAIM FAILS TO STATE A CLAIM FOR A BREACH OF THE DUTY OF LOYALTY OWED BY PLAINTIFF TO UPS

It has long been the rule that the employee duty of loyalty rests upon the rule that he who undertakes to act for another shall not in the same matter act for himself. Beatty v Guggenheim Exploration Co., 225 NY 380, 122 NE 378 (1919).  Not surprisingly then, in a recent action involving an alleged breach of loyalty by an associate at a large Manhattan law firm, Justice Bernard Fried recognized that, in New York, "the duty of loyalty … has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." Sullivan & Cromwell LLP v. Charney, 15 Misc.2d 1128 (A), 841 N.Y.S.2d 222 (Table), No. 600333/07, 2007 WL 1240437, *5 (N.Y. Sup. Ct., N.Y. Co. April 30, 2007) (citing cases); see also Camp Summit of Summitville, Inc. v. Visinski, No. 06 CV 4994 (CM)(GAY), 2007 WL 1152894, *13 (S.D.N.Y. April 16, 2007) (misappropriation of profits, property and business opportunities constitute a breach of an employee's duty of loyalty). [1]

---

[1] An employee's duty of loyalty to his employer is not a fiduciary one. See Western Electric Co. v. Brenner, 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 411 (1977) "[t]he employer-employee relationship is one of contract, express or implied"; see also Sullivan & Cromwell, 2007 WL 1240437 at *5 ("the law is … clear that no fiduciary duties exist between an employer and an at-will employee"). Accordingly, to the extent UPS claims that it counterclaim is one for breach of a fiduciary duty owed to UPS by Plaintiff, any such claim must also be dismissed.

5

Justice Fried's finding in Sullivan & Cromwell is borne out by case-law. See, e.g., Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc., 283 A.D.2d 448, 729 N.Y.S.2d 142 (2d Dep't 2001) (insurance agency's allegations that its former producer, while still in agency's employ, used agency's office facilities and equipment to solicit customers for himself and his new employer were sufficient to state claims for both breach of producer's employment agreement and breach of producer's duty of loyalty to agency); Laro Maintenance Corp. v. Culkin, 267 A.D.2d 431, 700 N.Y.S.2d 490 (2d Dep't 1999) (former employees, one of whom had been officer of corporate former employer, violated their duty of good faith and loyalty as employees and fiduciary duty as officer to refrain from engaging in competing business, when they used former employer's proprietary secrets to build competing business and when the former employee who was officer performed consulting work for benefit of the competing business while still employed by former employer); Phansalkar v. Anderson Weinroth & Co., L.P., 344 F.3d 184 (2d Cir. 2003) (merchant banker disregarded affirmative duty to act in employer's best interests where he failed to disclose six different interests or opportunities he received as his employer's representative and withheld cash and stocks that should have been turned over to employer); Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc., 100 A.D.2d 81, 474 N.Y.S.2d 281 (1st Dep't 1984) (employee breached duty of loyalty in creating business entity that competed directly with employer's business and diverted corporate opportunities to competing entity during his employment).

The allegations in UPS' counterclaim do not come close to alleging the kind claim encompassed by the faithless servant doctrine. Judge Lynch's decision in Sanders

v. Madison Square Garden, L.P., No. 06 Civ. 589 (GEL), 2007 WL 1933933 at *3 (S.D.N.Y., July 2, 2007) provides guidance as to why this is so. There, Madison Square Garden ("MSG"), the plaintiff's employer moved to amend its answer to assert a counterclaim based upon the faithless servant doctrine.  According to MSG, the plaintiff's tax returns obtained in discovery demonstrated that the plaintiff had been involved in a competing business during her employment with UPS and that, as such, the plaintiff had violated MSG's "Employee Code of Conduct" which, like Plaintiff here, she had signed upon her employment with MSG.  Id., at **1-2.

Judge Lynch held that "[w]hile employers may contractually obligate employees to act in an ethical manner, and condition continued employment on compliance with that requirement, an employee's alleged violation of that requirement does not result in a violation of the faithless servant doctrine unless the employee's unethical conduct "material[ly] and substantial[ly] infringed on her job performance."  Id., at *6.  According to Judge Lynch, under MSG's interpretation of the doctrine, an employer could sue an employee for engaging in *any* conduct that fell short of the employer's ethical standards.  Id.  Judge Lynch found MSG's reading of the duty of loyalty to be overbroad and denied MSG's motion seeking leave to amend its answer to add a breach of duty of loyalty counterclaim against the plaintiff.

Like in Sanders, the allegations contained in the proposed counterclaim do not rise to the level of satisfying the faithless servant doctrine.  Here, like in Sanders, despite premising its entire counterclaim upon UPS's "honesty in employment policy," (counterclaim ¶ 124),  UPS does not seek any damages for any breach of Plaintiff's

7

contractual promise. Indeed, like MSG in <u>Sanders</u>, UPS conspicuously fails to identify any way in which it has suffered any such damage. <u>See</u> <u>Sanders</u>, at *6.

Further, also like MSG in <u>Sanders</u>, UPS does not identify any way in which Plaintiff's alleged dereliction of his duties affected his performance. No customer complaints are alleged and there are no allegations of poor work performance other than an alleged violation of UPS' delivery policies and procedures.

Other than the nakedly speculative assertion that Plaintiff "knew or should have known" that he was involved in some sort of scam or conspiracy, there is no allegation that any fraud was perpetrated upon by UPS by Plaintiff himself.[2] Notably, there is no allegation that plaintiff personally stole any cell phones, or any other product while on his route. Similarly, there is no allegation that Plaintiff, or anybody else, personally profited from the alleged cell phone scheme. There is no allegation that Plaintiff received any money from Beato or anyone else. There is no allegation that any cash was exchanged between Beato and Plaintiff upon delivery of the eleven packages. And there is no allegation that Plaintiff's acts caused UPS to suffer a loss of profits or goodwill with any of its customers.

Though it is alleged that the names on "ship-to" addresses on the eleven packages did not correspond with the names at the addresses to which the eleven packages were addressed, there is no allegation (nor could there be), that Plaintiff was expected to know by heart the exact names and corresponding addresses of every apartment on the Washington Heights route.

---

[2] It is well established that under the heightened pleading requirements of Fed. R. Civ. P. 9(b), "conclusory allegations" do not state a claim for fraud. UPS must provide "at least a minimal factual basis" for its allegations of scienter. <u>In re Carter-Wallace, Inc., Securities Litigation</u>, 220 F.3d 36, 40 (2d Cir. 2000). UPS has singularly failed in this regard.

Reflecting the ultimate finding of the DA's office in the criminal case, UPS does not, because it cannot, allege that Plaintiff had any first-hand knowledge of the "scheme" it goes at such pains to describe in the counterclaim.  At best, all UPS alleges is that Plaintiff delivered eleven packages containing cell phones to Beato from his truck in violation of its delivery practices and procedures.  From this, UPS leaps to the wild conclusion that Plaintiff was involved in (or should have known he was involved in) some far reaching conspiracy even though Plaintiff readily admitted to delivering packages to Beato in this fashion over time.  Of course, were Plaintiff involved in such a conspiracy, it beggars belief that he would so readily admit to it.

Like MSG in Sanders, having accepted the fruits of Plaintiff's labors for almost eighteen months, UPS now argues it is entitled to accept those fruits for free by forcing the forfeiture of Plaintiff's pay as well as the attorney and investigator fees it incurred by reason of its own decision to pursue a malicious, and ultimately bungled, investigation of Plaintiff.

UPS seeks to stretch the boundaries of the faithless servant doctrine beyond all recognition.  The counterclaim should be dismissed.

**Conclusion**

For all the foregoing reasons, Plaintiff's motion to dismiss UPS' counterclaim should be granted and the Court should issue such other and further relief as it deems just and proper.

Dated: New York, New York
August 15, 2008

                                              Respectfully submitted,

                                              ADAM RICHARDS LLC

                         By:    /s Adam Richards
                               Adam Richards (AR-2489)
                               Attorneys for Plaintiff Keith Murray
                               40 Fulton Street, 7th Floor
                               New York, New York 10038
                               (212) 233.4400