ADAM RICHARDS LLC
Adam Richards (AR-2489)
40 Fulton Street, 7th Floor
New York, New York 10038
Telephone: (212) 233-4400
adam@arichardslaw.com

Attorneys for Plaintiff Keith Murray

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEITH MURRAY,

                              Plaintiff,

    - against -

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED PARCEL SERVICE, INC., and UNITED
PARCEL SERVICE CO.,

                              Defendants.

**Index No. 08 CV 02160
(LAK)(DFE)**

UNITED PARCEL SERVICE, INC.,

                              Third-Party Plaintiff,

    - against -

JOSE BEATO,

                              Third-Party Defendant.

## DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

I, ADAM RICHARDS, declare as follows:

    1.    I represent Plaintiff Keith Murray in the above-captioned action.   I

submit this declaration in support of Plaintiff's motion pursuant to Fed. R. Civ. P.

12(b)(6) to dismiss the counterclaim of Defendants United Parcel Service of America,

Inc., United Parcel Service, Inc. and United Parcel Service Co. (collectively "UPS") for failure to state a claim upon which relief can be granted.

    2.     Annexed hereto as Exhibit A is a copy of UPS' counterclaim ordered filed in this action by this Court on or about July 28, 2008.

    I declare under the penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct and that this Declaration was executed in New York, New York on August 15, 2008.

                   s/ Adam Richards

                   Adam Richards

# EXHIBIT A

Richard J. Rabin (RR-0037)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000

*Attorneys for Defendants United Parcel Service,*
*Inc., United Parcel Service of America, Inc., and*
*United Parcel Service Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

KEITH MURRAY,

                              Plaintiff,

                        -against-

UNITED PARCEL SERVICE OF AMERICA, INC.,
UNITED PARCEL SERVICE, INC., AND UNITED
PARCEL SERVICE CO.,

                            Defendants.

------------------------------------------------------------------- x
------------------------------------------------------------------- x

UNITED PARCEL SERVICE, INC.,

                      Third-Party Plaintiff,

                      -against-

JOSE BEATO,

                      Third-Party Defendant.

------------------------------------------------------------------- x

NO. 08-CV-02160 (LAK)

**PROPOSED AMENDED**
**ANSWER AND**
**COUNTERCLAIM**

    Defendants United Parcel Service, Inc., United Parcel Service of America, Inc., and

United Parcel Service Co. (collectively "Defendants" or "UPS") by and through their attorneys

Akin Gump Strauss Hauer & Feld LLP, hereby answers the First Amended Complaint (the

"Complaint") filed by Keith Murray ("Plaintiff") as set forth below. UPS further states that any allegation in the Complaint that is not expressly admitted below is denied.

## PARTIES

1.      UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations concerning Plaintiff's residence.

2.      UPS admits the allegations to Paragraph 2 of the Complaint and avers that Defendant United Parcel Service of America, Inc. is not a proper party to this action.

3.      UPS admits the allegations in Paragraph 3 of the Complaint.

4.      UPS admits the allegations in Paragraph 4 of the Complaint and avers that Defendant United Parcel Service Co. is not a proper party to this action.

5.      UPS denies the allegations in Paragraph 5 of the Complaint, except admits that UPS maintained places of business within New York State since January 1, 2004.

6.      UPS denies the allegations in Paragraph 6 of the Complaint, except admits that UPS owned, used or possessed real property within New York State since January 1, 2004.

7.      UPS denies the allegations in Paragraph 7 of the Complaint, except admits that UPS derived revenue from doing business within New York State since January 1, 2004.

8.      UPS denies the allegations in Paragraph 8 of the Complaint, except admits that Defendant Thomas Cleary ("Cleary") is employed by UPS and avers that Mr. Cleary is employed as a Security Supervisor.

9.      UPS denies the allegations in Paragraph 9 of the Complaint, except admits that Defendant Jillian Dedier ("Dedier") is employed by UPS and avers that Ms. Dedier is employed as a Security Supervisor.

## FACTS RELEVANT TO THE CASE

10.    UPS denies the allegations in Paragraph 10 of the Complaint concerning the date of Plaintiff's commencement of employment, and admits that Plaintiff was a package delivery driver (i.e., Service Provider) and that Plaintiff was assigned to a route in Washington Heights, Manhattan.

11.    UPS denies the allegations in Paragraph 11 of the Complaint.

12.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 12 of the Complaint, except denies that its supervisors or management approved Plaintiff's use of Jose Beato to deliver UPS packages.

13.    UPS denies the allegations in Paragraph 13 of the Complaint, except admits that an internal investigation was commenced in late 2006 into a possible cell phone scam focusing on Plaintiff Keith Murray.

14.    UPS denies the allegations in Paragraph 14 of the Complaint, except admits that Defendant Cleary was assigned to oversee the investigation.

15.    UPS denies the allegations in Paragraph 15 of the Complaint, except admits and avers that on February 2, 2007, Defendant Cleary and other individuals met Plaintiff at his package car while Plaintiff was on his route; that Defendant Cleary requested that Plaintiff accompany him back to UPS's 43rd Street facility due to an ongoing investigation; and that Defendant Cleary also requested that Plaintiff hand over his personal cell phone because Defendant Cleary did not want Plaintiff to contact anyone about the investigation.

16.    UPS admits that Plaintiff complied with Defendant Cleary's requests.

17.    UPS denies the allegations in Paragraph 17 of the Complaint, except admits and avers that Plaintiff was accompanied to UPS's 43rd Street facility.

18.    UPS denies the allegations in Paragraph 17 of the Complaint, except admits that Defendant Cleary showed Plaintiff a photograph of Mr. Beato and asked if Plaintiff recognized Mr. Beato; that Defendant Cleary asked what Plaintiff knew about the delivery of fraudulently ordered cell phones; and that Plaintiff provided Defendant Cleary with the explanation set forth in Paragraph 18 of the Complaint.

19.    UPS denies the allegations in Paragraph 19 of the Complaint and avers that Plaintiff was asked to write a statement and in fact wrote a 2 page statement in which he admitted to delivering cell-phone packages to "Jose" 2-3 times per week (for approximately 1 year) directly from his package car while knowing that Jose's identification did not match the intended recipients of the packages.

20.    UPS denies the allegations in Paragraph 20 of the Complaint.

21.    UPS denies the allegations in Paragraph 21 of the Complaint.

22.    UPS denies the allegations in Paragraph 22 of the Complaint.

23.    UPS denies the allegations in Paragraph 23 of the Complaint.

24.    UPS denies the allegations in Paragraph 24 of the Complaint, except admits that after Plaintiff's interview with Defendants Cleary and Dedier concluded, police officers from the New York City Police Department entered the interview room and placed Plaintiff under arrest.

25.    UPS denies the allegations in Paragraph 25 of the Complaint, except admits that Plaintiff denied all knowledge of criminal activity.

26.    UPS denies the allegations in Paragraph 26 of the Complaint.

27.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 27 of the Complaint, except admits that Plaintiff was handcuffed and escorted out of the building.

28.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 28 of the Complaint.

29.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 29 of the Complaint.

30.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 30 of the Complaint.

31.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 31 of the Complaint.

32.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 32 of the Complaint.

33.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 33 of the Complaint.

34.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 34 of the Complaint.

35.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 35 of the Complaint.

36.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 36 of the Complaint.

37.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 37 of the Complaint.

38.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 38 of the Complaint.

39.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 39 of the Complaint.

40.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 40 of the Complaint.

41.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 41 of the Complaint.

42.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 42 of the Complaint.

43.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 43 of the Complaint.

44.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 44 of the Complaint.

45.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 45 of the Complaint.

46.     UPS admits the allegations in Paragraph 46 of the Complaint.

47.     UPS admits that the Administrative Law Judge took evidence and heard testimony from both parties, although denies that Defendant Cleary was given an adequate opportunity to present UPS's position concerning Plaintiff's misconduct and resignation.

48.     With respect to Paragraph 48 of the Complaint, UPS admits that Plaintiff purports to quote language contained in the ALJ's opinion issued in Plaintiff's unemployment insurance case, and refers the Court to such opinion for a true and accurate transcription thereof.  UPS otherwise denies the allegations in Paragraph 48 of the Complaint.

49.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 49 of the Complaint.

50.    With respect to Paragraph 50 of the Complaint, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 50, except denies such allegations to the extent they are asserted against UPS in any respect.

51.    With respect to Paragraph 51 of the Complaint, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 50, except denies such allegations to the extent they are asserted against UPS in any respect.

52.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 52 of the Complaint.

53.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 53 of the Complaint.

54.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 54 of the Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

55.    UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 54 the Complaint.

56.    UPS denies the allegations in Paragraph 56 of the Complaint.

57.    UPS denies the allegations in Paragraph 57 of the Complaint.

58.    UPS denies the allegations in Paragraph 58 of the Complaint, except admits that Plaintiff willfully consented to be interviewed by UPS (Plaintiff's employer) on UPS' premises during working hours concerning the performance of his duties for UPS.

59.    UPS denies the allegations in Paragraph 59 of the Complaint.

60.    UPS denies the allegations in Paragraph 60 of the Complaint.

61.    Paragraph 61 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 61.

62.    Paragraph 62 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 62.

63.    UPS denies the allegations in Paragraph 63 of the Complaint.

64.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 64 of the Complaint.

65.    UPS denies the allegations in Paragraph 65 of the Complaint.

66.    UPS denies the allegations in Paragraph 66 of the Complaint.

67.    UPS denies the allegations in Paragraph 67 of the Complaint.

68.    UPS denies the allegations in Paragraph 68 of the Complaint.

69.    UPS denies the allegations in Paragraph 69 of the Complaint

### AS AND FOR A SECOND CAUSE OF ACTION
### (State Law False Arrest and False Imprisonment)

70.    UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 69 the Complaint.

71.    UPS denies the allegations in Paragraph 71 of the Complaint.

72.    UPS denies the allegations in Paragraph 72 of the Complaint.

73.    UPS denies the allegations in Paragraph 73 of the Complaint.

74.    UPS denies the allegations in Paragraph 74 of the Complaint.

75.    UPS denies the allegations in Paragraph 75 of the Complaint.

76.    UPS denies the allegations in Paragraph 76 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION
### (State Law Malicious Prosecution)

77.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 76 the Complaint.

78.     UPS denies the allegations in Paragraph 78 of the Complaint.

79.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 79 of the Complaint, except denies that the criminal proceeding against Plaintiff was affirmatively procured or instigated by Defendants Cleary, Dedier and/or UPS.

80.     UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 80 of the Complaint.

81.     Paragraph 81 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 81.

82.     UPS denies the allegations in Paragraph 82 of the Complaint.

83.     UPS denies the allegations in Paragraph 83 of the Complaint.

84.     UPS denies the allegations in Paragraph 84 of the Complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

85.     UPS incorporates and repeats as if fully set forth herein each and every one of its responses to the allegations in Paragraphs 1 through 84 the Complaint.

86.     UPS denies the allegations in Paragraph 86 of the Complaint.

87.     UPS denies the allegations in Paragraph 87 of the Complaint.

88.     UPS denies the allegations in Paragraph 88 of the Complaint.

89.   UPS denies the allegations in Paragraph 89 of the Complaint.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision)

90.   UPS incorporates and repeats as if fully set forth herein each and every one of its

responses to the allegations in Paragraphs 1 through 89 the Complaint.

91.   UPS denies the allegations in Paragraph 91 of the Complaint, except admits that

Defendant Cleary has been an employee of UPS at least since January 1, 2004.

92.   UPS denies the allegations in Paragraph 92 of the Complaint, except admits that

Defendant Dedier has been an employee of UPS at least since January 1, 2004.

93.   UPS denies the allegations in Paragraph 93 of the Complaint.

94.   UPS denies the allegations in Paragraph 94 of the Complaint.

95.   UPS denies the allegations in Paragraph 95 of the Complaint.

96.   UPS denies the allegations in Paragraph 96 of the Complaint.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Punitive Damages)

97.   UPS incorporates and repeats as if fully set forth herein each and every one of its

responses to the allegations in Paragraphs 1 through 96 the Complaint.

98.   UPS denies the allegations in Paragraph 98 of the Complaint.

99.   UPS denies the allegations in Paragraph 99 of the Complaint.

With respect to the WHEREFORE paragraph following Paragraph 99 of the Complaint,

UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that

Plaintiff is entitled to such or other remedies or relief.

### DEFENSES AND AFFIRMATIVE DEFENSES

100.   The Complaint fails to state a claim upon which relief can be granted.

101.   The Court lacks personal jurisdiction over the Defendants.

102.    Defendants United Parcel Service of America, Inc. and United Parcel Service Co. are not proper parties to this litigation as they do not employ Defendants Dedier and Cleary (nor did they employ Plaintiff), and had no involvement whatsoever in the investigation of Plaintiff's misconduct and his voluntary resignation from UPS.

103.    Plaintiff's claims are barred in whole or in part by the exclusive remedies provision of New York's Workers' Compensation Law.

104.    Plaintiff's claims are preempted under federal labor law, including without limitation, Section 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185, and Sections 7 and 8 of the National Labor Relations Act ("NLRA"), 28 U.S.C. §§ 157, 158.

105.    On the facts alleged, Plaintiff is not entitled to any of the relief requested in the Complaint.

106.    Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

107.    Plaintiff's claims are barred, in whole or in part, by laches, waiver, release, arbitration and award, the existence of an applicable collective bargaining agreement, satisfaction and accord, estoppel, res judicata, collateral estoppel, and/or unclean hands.

108.    Plaintiff's claims are barred in whole or in part by Plaintiff's failure to do equity.

109.    On the facts alleged, Plaintiff is not entitled to the compensatory and punitive damages requested in the Complaint, or any other relief. Indeed, there is no basis, in law or in fact, to support Plaintiff's claims for punitive damages. UPS did not engage in any unlawful practices with malice or with reckless indifference to Plaintiff's rights.

110.    The Amended Complaint fails to state a claim upon which attorneys' fees or costs can be awarded.

111.    Any damages that Plaintiff could recover are barred or reduced by his failure to mitigate damages.

112.    Plaintiff is not entitled to any recovery because any alleged acts or omissions by Defendants were privileged, did not breach any duties owed to Plaintiff or others, and were made in good faith, in conformity with and reliance on applicable administrative regulations, orders, rulings, approvals or interpretations, or administrative practice or enforcement policies.

113.    UPS is not liable under 42 U.S.C. § 1983 because any alleged acts or omissions by UPS were not taken under color of state law.

114.    Plaintiff's false imprisonment claims are barred in whole or in part by the doctrines of consent, privilege and legal justification.

115.    Plaintiff's malicious prosecution claims are barred in whole or in part because of the existence of probable cause, because Plaintiff's criminal proceeding did not result in a favorable termination, and because of the absence of actual malice on the part of UPS.

116.    All or part of Plaintiff's claims are barred under the *de minimis* doctrine.

117.    Defendant UPS is not liable to Plaintiff for the acts or omissions of any supervisory or managerial employee which were beyond the scope of employment and hence, any such conduct may not be attributed to UPS through principles of agency, *respondeat superior*, or otherwise.

118.    The alleged acts or omissions of Defendants were not the proximate cause of any injuries or damages allegedly incurred by Plaintiff.

119.    To the extent, if any, Plaintiff has suffered any damages and/or losses, such damages and losses were a result of Plaintiff's own conduct and/or omissions.

120.   Defendants reserve the right to add, alter and/or amend their defenses and

affirmative defenses as the course of discovery so requires.

## AS AND FOR A FIRST COUNTERCLAIM BROUGHT BY DEFENDANT UNITED PARCEL SERVICE, INC.
### (Breach of Fiduciary Duty of Loyalty)

121.   Defendant United Parcel Service, Inc. repeats and realleges their answers,

defenses, and allegations set forth in paragraphs 1 through 120 of the Proposed Amended Answer

and Counterclaim, as if fully set forth herein.

122.   As a UPS employee, Plaintiff owed UPS the duty of utmost good faith and loyalty

in the performance of his duties.

123.   On or about August 15, 2005, Murray began work with UPS as a cover driver in

the Metro New York district, Manhattan North facility, assigned to cover routes for other drivers

who were on vacation or extended leave.

124.   Upon commencement of his employment, Murray signed a Policy

Acknowledgement form agreeing "to comply with all applicable policies, rules, regulations, and

procedures of the Company", including without limitation, UPS's honesty in employment policy.

125.   As a cover driver, Murray selected which route he wanted to take from a number

of available routes. Beginning in or around mid-2006, Murray began to cover a route in the

Washington Heights area of Manhattan. While assigned to the Washington Heights route,

Murray was responsible for delivering packages to, and picking packages up from, UPS

customers along his route.

126.    During his stint covering the Washington Heights route, Murray – by his own admission – became friendly with an individual later identified as third-party defendant Jose Beato and frequently diverted cell phone packages to Beato, rather than delivering them to their intended recipients.

127.    In or around December 2006, UPS commenced an investigation based on information provided to its Security Department that Murray was potentially involved in a scheme to steal fraudulently ordered cell phones. As part of the investigation, on December 28, 2006, UPS retained a private investigator to conduct video surveillance of Murray while on his route in Washington Heights.

128.    Surveillance was conducted on December 29, 2006, and again on January 2, 5, 29 and February 2, 2007. The surveillance revealed that on December 29, 2006, January 5, 2007, and February 2, 2007, Murray released a total of eleven (11) clearly marked packages containing Sprint cellular phones to Beato directly from his package delivery vehicle *without verifying that Beato was the intended recipient – and indeed with full knowledge that the packages were not intended for Beato –* in violation of Company policy.

129.    On December 29, 2006, after receiving cell phones from Murray, Beato was observed entering a G & P Cell Center with the Sprint packages and exiting without the cell phones. On February 2, 2007, a similar pattern occurred, as. Beato received six (6) cell phones from Murray and was observed entering G & P Cell Center and taking Sprint packages out of his backpack and placing them on the store counter.

130.    Indeed, all eleven (11) cell phone packages released on December 29, 2006, January 5, 2007 and February 2, 2007 were delivered to Beato in the same manner. Murray was

not observed, nor did he ever claim, to have delivered packages *other than* cell phones to Beato despite (i) Murray's claim that Beato was allegedly a so-called "super-helper" who worked in a building along Murray's route, and (ii) the fact that on certain of days in question there were also non-Sprint cell phone packages on his vehicle to be delivered to the same buildings which were *not* given to Beato. Under these circumstances, Murray simply could not legitimately believe that Beato was in fact a "super-helper." The eleven (11) fraudulently ordered phones seen delivered by Murray to Beato on December 29, 2006, January 5, 2007, and February 2, 2007 were valued at $5,910.

131.    Further investigation revealed that the "ship to" addresses for the eleven packages released to Beato were all, in fact, fictitious. In all eleven (11) cases, either the names on the packages did not correspond with the name at the "ship to" address or the apartments simply did not exist in the buildings to which the packages were addressed.

132.    On February 2, 2007, the six (6) cell phone packages released to Beato within 30 minutes of one another were, in fact, addressed to six (6) different addresses on West 188th and 190th Streets. In spite of this, Murray nevertheless delivered them all to Beato *without* verifying identification and knowing full well that the packages were not addressed to him. Murray also did not verify that the intended recipients reside at the location to which the packages were addressed, nor did he leave any notes for them informing them a delivery attempt.

133.    During its investigation, UPS also contacted Sprint's Security Department and confirmed that the packages seen delivered to Beato were fraudulently ordered insurance replacement phones – *i.e.*, replacement phones ordered through an insurance program for damaged, lost or stolen cell phones.

134.  Unfortunately, scams such as that perpetrated by Murray and Beato are not uncommon in the delivery industry. Typically, the scheming party obtains a Sprint Customer's account information and surreptitiously orders replacement phones through Sprint's insurance carrier (e.g., Asurion Corp.) using the customer's information. The scheming party then requests that the replacement phones be shipped to a location other than the address associated with the customer's account. In this case, third-party defendant Beato met Murray on his delivery route and obtained the fraudulently ordered cell phones directly from him. In order for this scam to succeed, the driver delivering the packages must be a willing participant, as he or she must be willing to violate UPS policy by delivering multiple packages to one individual who lacks proper identification.

135.  On February 2, 2007, UPS Security interviewed Murray regarding his role in this scheme. During the interview, Murray readily admitted, in a written statement, that "for about a year [Jose Beato] would come up to [the] truck, 2 maybe 3 times a week" and that Murray "would deliver packages to him, mostly cell phones" without requesting proper identification, or otherwise verifying that Beato was the intended recipient. Indeed, Murray even acknowledged that he "realized that [Beato's] I.D. didn't match the package he got from [Murray]."

136.  When it was apparent to Murray that his involvement in the scam had been exposed, he voluntarily resigned from UPS, effective immediately.

137.  Following the interview, Murray, Beato, and an employee of G & P Cell Center were all arrested and taken into custody by the New York City Police Department ("NYPD") in connection with their scheme.

138.    Plaintiff knew or should have known that his conduct was in furtherance of an unlawful scheme perpetrated by means of UPS's package delivery system.

139.    Plaintiff breached his fiduciary duty of loyalty to the company and defrauded UPS, its investors, its customers and Sprint and Asurion Corp by affirmatively engaging in the aforementioned scheme.

140.    Plaintiff's disloyal activity was conducted during working hours, using UPS's vehicles and equipment and materially and substantially permeated his services as a driver for UPS.

141.    By reason of the foregoing, UPS has been damaged in an amount to be determined at trial, including but not limited to, all compensation received by Plaintiff's during the period of his disloyalty including salary, benefits and other perquisites as well as all expenses incurred by UPS during the course of its investigation into plaintiff's misconduct, including costs associated with retaining a private investigator, in an amount to be determined by the Court, together with all other remedies deemed appropriate by the Court.

WHEREFORE, having fully answered the Amended Complaint, Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice, or in the alternative, that each and every request for relief in the Amended Complaint be denied, that all costs and attorneys' fees be awarded to Defendants against Plaintiff, that all relief with respect to Defendants' Counterclaim be granted, and that the Court grant such other relief as it may deem just and proper.

Dated: New York, New York
July 9, 2008

Respectfully submitted,

By: _____

Richard J. Rabin, Esq.
Evandro Gigante, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Ave.
New York, New York 10022
(212) 872-1000 (tel)
(212) 872-1002 (fax)

*Attorneys for Defendants United Parcel Service, Inc., United Parcel Service of America, Inc., and United Parcel Service Co.*