UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KEITH MURRAY,

                Plaintiff,

    -against-                                                            08-cv-2160 (LAK)

UNITED PARCEL SERVICE, INC., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

      Appearances:

               Adam Richards
               ADAM RICHARDS LLC
               *Attorney for Plaintiff*

               Richard J. Rabin
               Michelle A. Burg
               AKIN GUMP STRAUSS HAUER & FELD LLP
               *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge*

        Keith Murray asserts federal and state law claims of false arrest and imprisonment and malicious prosecution against his former employer, United Parcel Service, Inc. ("UPS"). The gravamen of the complaint is that UPS instigated Murray's allegedly false arrest and malicious prosecution by law enforcement personnel for his alleged involvement in a scheme to obtain

2

fraudulently and sell cellular phones.[1] UPS counterclaims for breach of Murray's duty of loyalty. The matter is before the Court on UPS's motion for summary judgment dismissing the complaint[2] and the parties' cross-motions for summary judgment on the counterclaim.

*Facts*

Murray began working as a driver for UPS, the shipping company, in July 2005. He was assigned to cover routes for absent drivers, sometimes in Washington Heights.

In order to expedite deliveries and reduce the number of packages requiring re-delivery – or "send agains" – UPS encourages its drivers to get to know building superintendents and their helpers (or "super helpers").[3] Murray did so, coming to know, among others, Jose Beato, a super helper for several buildings in Washington Heights.[4]

During the winter of 2005/06, Murray noticed Beato appearing at various locations with different individuals to pick up packages. Typically, the person waiting with Beato would present identification and a receipt, receive the package, and then hand it to Beato. Beato then would

---

[1] Murray originally asserted also that UPS falsely arrested or imprisoned him during an interview at a UPS facility in Manhattan. At the hearing on the motions for summary judgment, Murray declined to press this claim. Tr. Mar. 11, 2009, at 14-18. Accordingly, UPS is entitled to summary judgment dismissing so much of Murray's claim as asserts that UPS falsely arrested or imprisoned Murray at the Manhattan facility.

[2] Murray has dropped his negligence claims. *See* Docket Item 73.

[3] *See* Richards Decl. Exh. A (Murray Dep.) 68 (hereinafter "Murray Dep."); Richards Decl. Exh. C (Cleary Dep.) 212-13 (hereinafter "Cleary Dep.").

[4] Murray Dep. 82, 84.

walk away with the package.[5]

Murray claims that he twice registered concern about Beato's activity to his supervisor, Ralph Cotter.[6] According to Murray, Cotter told him that Beato's relationship with UPS customers was not his concern and that Murray should "just get the packages off."[7]

Some time during the summer of 2006, Murray began delivering packages from his truck directly to Beato. Beato would call Murray on his route to arrange deliveries and, when Murray arrived, Beato would present his green card, along with sales receipts and UPS delivery tracking numbers for the packages.[8] Murray matched the tracking numbers to the customer receipts presented by Beato. According to Murray, Beato always signed Murray's delivery information acquisition device ("DIAD")[9] when picking up packages from Murray's truck. Murray acknowledged receiving money from Beato, which he characterizes as "tips." He claims also that he received tips from "many customers" on his route.[10]

---

[5] *Id.*. 78-79.

[6] *Id.* 81. Cotter did not recall receiving calls from Murray while Murray was on the road. *See* Richards Decl. Exh. B at 21-25; 26-27 (hereinafter "Cotter Dep.").

[7] Murray Dep. 79-80.

[8] *Id.* 97-98.

[9] When making a delivery, a UPS driver scans the relevant package(s) and enters electronic tracking and trace ("ETT") data into the driver's DIAD. The ETT information includes shipper information, the shipping address, the time and date of the delivery stop, whether the package was delivered or the delivery attempt failed, and the name of the receiver.

[10] *Id.*. 117-18.

4

*UPS Investigates Murray*

In late 2006, another UPS driver provided a confidential tip to the UPS security hotline. The tipster claimed that, while the tipster was on his route, an individual whom he believed was named Alex approached him about getting involved in a cell phone scam in which other UPS drivers were involved.[11] UPS security personnel met with the tipster several times. Although he did not identify Murray as involved in the scam, the tipster identified Murray as one of several UPS drivers who work in the vicinity.[12]

UPS security supervisor, Thomas Cleary, conducted an investigation, which included examining electronic delivery records and hiring a third party to surveil Murray along his route. On three of the five dates on which he was surveilled, Murray was observed and recorded improperly giving packages containing Sprint cell phones from his UPS truck to Beato on the street.[13] Cleary's comparison of the video surveillance and electronic delivery data revealed that Murray logged packages as delivered to the actual addressees when in fact he was handing them to Beato on the street. UPS's investigation revealed also that Beato, upon receiving the phones from Murray, sold sold them to a local cell phone store for profit.[14] UPS confirmed with Sprint that the cell phones at

---

[11] *See* Richards Decl. Exh. I at 28-32 (hereinafter "Guzman Dep."); Cleary Dep. 60, 70-78, 239-40.

[12] Guzman Dep. 28-32.

[13] *See* Burg. Decl. Exh. 12, Exhs. A and B.

[14] *See* Def. Br. at 10.

issue were insurance replacement phones that had been ordered fraudulently.[15]

*UPS Contacts the Police*

UPS contacted the New York City Police Department ("NYPD") regarding Murray in early January 2007. Cleary called and reported "'suspected fraud with a driver of ours involved.'"[16] UPS kept the police informed of its investigation and provided them with information on its findings. Nevertheless, Clearly never informed the police that the investigation of Murray had begun with a confidential tip or that a man named "Alex" had first approached the tipster about the scam, as he deemed the information unimportant.[17]

*Murray's UPS interview and Arrest*

On February 2, 2007, Cleary interviewed Murray at a UPS facility in Manhattan. Murray there told Cleary of his deliveries to Beato and the methods he used. He said that Beato had tracking numbers for the packages and that Beato signed the DIAD.[18] Denying involvement in any fraudulent activity, Murray told Cleary also that Ralph Cotter had told him that the deliveries to Beato were acceptable.[19] He provided also a written statement describing his deliveries to Beato,

---

[15] Cleary Dep. 143, 308-10.

[16] *Id.* 136.

[17] *Id.* 138, 143.

[18] Richards Decl. Exh. J.

[19] Cleary Dep. 199-201.

explaining them as part of his response to pressure to reduce his "send agains."[20] Cleary then told Murray that he could resign for personal reasons or be fired for dishonesty and theft of customer merchandise.[21] "Scared and distressed," Murray resigned.[22] As soon as the interview ended, officers from the NYPD arrested Murray. On August 23, 2007, the criminal case against Murray was sealed and dismissed.[23]

## *Discussion*

I.  *The Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[24] In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.[25]

---

[20] Richards Decl. Exh. K.

[21] Murray Dep. 145-46.

[22] *Id.* 146.

[23] Exh. R (criminal file). Also Cleary Dep. 232-234

[24] *E.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 300 (2d Cir.2000); *see also* FED. R. CIV. P. 56(c).

[25] *See Anderson*, 477 U.S. at 255.

7

A.    *False Arrest/Imprisonment*

To make out a claim for false arrest or false imprisonment,[26] a plaintiff must show that the defendant intentionally confined him, that the plaintiff was conscious of and did not consent to the confinement, and that the confinement was not otherwise privileged.[27]  A plaintiff may establish intentional confinement by showing that the defendant "affirmatively procured or instigated the plaintiffs' arrest" by another.[28]  Probable cause "'is a complete defense to an action for false arrest'"[29]  It "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty."[30]

---

[26] New York draws no distinction between false arrest or false imprisonment.  *See e.g., Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.") (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473, 334 N.Y.S.2d 632, 638 (1972)).

[27] *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995), *cert denied*, *Singer v. Sheriff*, 517 U.S. 1189 (1996).  *See also Frederick v. State*, 874 N.Y.S.2d 762, 768 (N.Y. Ct. Cl. 2009).

[28] *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997) (citing *Carrington v. City of New York*, 201 A.D.2d 525, 526-27, 607 N.Y.S.2d 721, 722 (2d Dep't 1994)).

[29] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see also Broughton v. State,* 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 94-95, *cert. denied,* 423 U.S. 929 (1975).("Justification may be established by showing that the arrest was based on probable cause.").  There is some dispute whether, in cases of alleged instigation, courts should examine probable cause from the standpoint of the citizen-instigator or the law enforcement authorities who actually made the arrest.  *Compare Carson v. Dessau*,142 N.Y. 445, 448 (1894); *Grinell v. Weston*, 95 A.D. 454, 88 N.Y.S. 781 (1st Dep't 1904) *with Green v. Fankhauser*, 137 A.D. 124, 129, 121 N.Y.S. 1004 (1st Dep't 1910); *Thompson v. Fisk*, 50 A.D. 71, 73, 63 N.Y.S. 352 (4th Dep't 1900).  The Court need not reach that question here because the undisputed facts make clear that from either standpoint, there was probable cause for Murray's arrest.

[30] *Colon v. City of New York*, 60 N.Y.2d 78, 82-83, 468 N.Y.S.2d 453, 455-56 (1983).

8

Murray contends that UPS affirmatively procured or instigated his arrest and imprisonment by the NYPD.[31] While the limits of that concept are not clear, the point need not detain us, as even if Murray were persuasive on that issue, his claim would still fail because undisputed facts establish probable cause. Indeed, the facts and circumstances supporting UPS's probable cause defense are compelling.

UPS received a tip from one of its employees that some of its drivers were involved in a cell phone scam around the Washington Heights. The tipster identified Murray as one of the drivers working in the area. Upon receiving the tip, UPS began an investigation that included looking specifically at Murray.

UPS followed Murray's delivery practices for over a month. It found suspicious delivery patterns and deliveries in violation of company policy. Video surveillance showed Murray delivering multiple packages containing cell phones to Beato, deliveries that Murray falsely logged as having been made to the addresses on the packages. Immediately after receiving the phones, Beato sold them to a cell phone store.

During his interview with UPS, Murray acknowledged having given packages to Beato even though Beato's identification did not match the names on the packages that Beato collected. Murray acknowledged also having received "tips" from Beato in connection with deliveries to him. Murray's claim that he delivered packages to Beato in Beato's capacity as a super helper was belied by the fact that some of the packages he delivered to Beato were addressed to

---

[31] Cpt. ¶ 71.

buildings in which Beato did not work or were addressed to non-existent addresses.[32] Finally, even for the buildings for which Beato purportedly worked, Murray delivered *only* cell phones to him in this manner; he delivered other packages for those buildings in the ordinary fashion. As UPS pointed out, even Murray's counsel could not think of an innocent explanation for this pattern.[33]

Rather than disputing these facts, Murray attempts to shift the argument. He contends that UPS ignored certain facts and failed to follow avenues of investigation that, he surmises, would have led to other evidence that, in Murray's view, would have cut in his favor.

Murray first relies on evidence that UPS's awareness of the following facts undercut probable cause: (1) the tipster never named Murray as the man who approached him about the scam, and (2) at one point during the investigation, Cleary told the tipster that "Murray was not panning out" as a target of investigation.[34] Murray's argument is unpersuasive.

"'[T]he standard for establishing probable cause is not a particularly stringent one,'" and "'does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances.'"[35] Indeed, as the Second Circuit explained recently:

> "The fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause. Once a police

---

[32] *See* Cleary Dep. 82-84; Burg Decl. Exh. 7 at Exh. A; Exh. 12 at Exhs. A, B, and C.

[33] Cleary Dep. 253.

[34] Guzman Dep. 32-33.

[35] *Daniels v. D'Aurizo*, 564 F. Supp. 2d 194, 197 (W.D.N.Y. 2008) (citations omitted).

officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Although a better procedure may be for the officers to investigate plaintiff's version of events more completely, an arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest. Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted."[36]

Murray next contends that there are genuine issues of material fact because Cleary (1) waited until weeks after Murray's arrest before speaking with his road manager, Ralph Cotter, (2) was unaware of Murray's "send again" rate, (3) did not examine Murray's personnel file prior to his arrest, and (4) did not follow up on Murray's claim that Beato always signed the DIAD when receiving packages.[37] But these arguments too are insufficient.

The facts, if they be so, that the tipster never identified Murray and that Cleary at one point made the quoted comment are insufficient as a matter of law to defeat probable cause. Quite simply, UPS was under no duty to complete a full investigation or tie up every loose thread before coming to the reasonable belief that Murray was involved in criminal activity.

Furthermore, even if UPS had been obligated to follow up on these facts, none of the purported failures to investigate to which Murray points would have come close to vitiating probable

---

[36] *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) (internal quotations omitted). *See also Colon*, 60 N.Y.2d at 83 ("Undoubtably, further avenues of investigation were open to the police before they relied on circumstantial evidence of the killer's identity, but their failure to pursue the investigation is not the equivalent of fraud or the suppression of evidence."); *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 221 (E.D.N.Y. 2007) (rejecting the argument that defendant's failure to investigate plaintiff's alibi negated probable cause and holding that "'[o]nce a police officer has a reasonable basis for believing that there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'") (citations omitted).

[37] *Id.*

cause.  For example, when Cleary did finally speak to him, Cotter did not support Murray's account.[38]  Moreover, even if Cotter had supported Murray's claim that Murray contacted him with concerns about Beato, that would not have helped Murray.  After all, Murray claims to have raised with Cotter only the subject of Beato collecting packages in the presence of third parties whose names matched the packages.  What Murray was caught doing, however, was providing packages directly to Beato without the proper recipient present.  Thus, by Murray's own account, Cotter did not authorize him to deliver packages in the way he ended up delivering them to Beato.

The other investigative avenues Murray raises are even less material to the existence of probable cause for his arrest.  For instance, Clearly's unawareness that Murray's "send again" rate was high, and his failure to examine Murray's personnel file prior, as a matter of law could not vitiate probable cause in light of the other facts and circumstances.  Likewise, that Beato might have signed Murray's DIAD does nothing to undermine UPS's reasonable belief, backed up by evidence including electronic records and Murray's own statement, that he was involved in a cell phone scam.

In short, on the basis of the undisputed facts recited above, viewed in the light most favorable to Murray, it is clear that a reasonable person in UPS's position would have suspected Murray of the commission of a crime at the time of his arrest.  UPS therefore is entitled to summary judgment dismissing Murray's claim of false arrest.

B.   *Malicious Prosecution*

Under New York law, the elements of malicious prosecution "are (1) that a defendant

---

[38]   Cotter Dep. 27.

12

commenced a criminal proceeding against the plaintiff; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the initiation or continuation of the proceeding; and (4) that the defendant acted with malice."[39]

Though the parties dispute the issue, the Court assumes without deciding that UPS in fact instigated Murray's prosecution. Murray's claim nonetheless fails because he has not raised a genuine issue of material fact as to the alleged lack of probable cause for the initiation or continuation of the proceedings against him.[40] Indeed, this follows *a fortiori* from the preceding discussion.

Furthermore, given the totality of the circumstances of which it was undisputably aware, none of the information supposedly "withheld" by UPS would have undermined the reasonable belief on the part of UPS or the police that Murray was involved in criminal activity. Accordingly, UPS is entitled to summary judgment dismissing Murray's malicious prosecution claim.

III.    *UPS's Counterclaim*

UPS asserts that Murray is liable, under New York's faithless servant doctrine, for abusing his position of trust at the company by engaging in a scheme to divert and sell cell phones.

There are material issues of fact as to whether Murray violated his duty of loyalty to

---

[39] *Ramos v. City of New York*, 298 Fed. Appx. 84, 85 (2d Cir. 2008).

[40] In contrast to the false arrest context, in which probable cause is an affirmative defense, lack of probable cause is a required element of a plaintiff's *prima facie* case for malicious prosecution. *See, e.g.*, *Broughton*, 37 N.Y.2d at 456-59.

UPS.  Accordingly, the Court denies the parties' cross-motions for summary judgment on UPS's duty of loyalty claim.

*Conclusion*

For the foregoing reasons, UPS's motion for summary judgment dismissing the complaint (docket item 56) is granted.  The cross-motions for summary judgment on UPS's counterclaim(docket items 56 and 64**)** are denied.

SO ORDERED.

Dated:    April 29, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)